# United States Court of Appeals
## For the First Circuit

No. 14-2138

JORGE MARIO MARÍN-PORTILLO,

Petitioner,

v.

LORETTA E. LYNCH,
ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Kayatta, and Barron,
<u>Circuit Judges</u>.

Claudia Gregoire and Mills & Born LLP, on brief for petitioner.
David Schor, Trial Attorney, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Civil Division, and Emily Anne Radford, Assistant Director, on brief for respondent.

August 23, 2016

**TORRUELLA**, **Circuit Judge**.  Jorge Mario Marín-Portillo ("Marín") petitions this court for review of an order from the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") denial of his request for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").  Finding Marín's arguments unpersuasive, we deny his petition.

## I.

We recount the facts as presented in the record, noting that the IJ assumed that Marín was credible.  Marín was born and raised in Guatemala.  In November 2006, when Marín was seventeen years old, a police officer named Edgar Leonel Cuellar shot and killed Marín's father after Marín's father declined to lend him money.  Cuellar believed Marín's father was wealthy and had previously borrowed money from him.

Cuellar was convicted of robbery and battery, but not murder, and incarcerated for three years.[1]  While Cuellar was incarcerated, Marín's mother received five to six phone calls telling her that, upon his release, Cuellar would kill her as well

---

[1]  Cuellar's exact sentence is not clear from the record.  Marín testified that Cuellar had received a five-year sentence, but that people typically serve only half of their sentence in Guatemala. Nonetheless, Marín stated that Cuellar was released in November 2011 or February 2012, which would correspond with a five-year sentence.

as Marín, Marín's brother, and Marín's uncle as retaliation for pressing charges against him. In addition, Cuellar had family members of another person in jail tell Marín and members of his family in person that Cuellar would kill them.

Based on these threats, Marín left Guatemala in February 2011 and entered the United States that March without inspection. After Marín left, Cuellar was released. Marín's family, including his mother, uncle, two sisters, and two brothers, remain in Guatemala and have not been harmed.[2]

In May 2011, the Government initiated removal proceedings against Marín for entering the United States without a valid entry document pursuant to Immigration and Nationality Act ("INA") section 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I). Marín conceded removability and subsequently applied for asylum, withholding of removal, and protection under CAT on the grounds that Cuellar's threats constituted persecution based on the social group of his family and demonstrated the likelihood that Marín would be tortured or killed if he returned to Guatemala. An IJ denied Marín's application and Marín sought review before

---

[2] Marín's older brother, who was also a target of Cuellar's threats, did seek work outside of Guatemala because he feared Cuellar would kill him. Nonetheless, Marín's older brother returned to Guatemala occasionally and was not harmed.

the BIA. The BIA affirmed, adopting some, but not all, of the IJ's reasoning. This timely petition followed.

## II.

When the BIA incorporates portions of the IJ's opinion and also supplies its own analysis, we review the decisions together. Dimova v. Holder, 783 F.3d 30, 35 (1st Cir. 2015). We review questions of fact under the deferential "substantial evidence" standard, and we "will affirm unless 'any reasonable adjudicator would be compelled to conclude to the contrary.'" Tobón-Marín v. Mukasey, 512 F.3d 28, 30 (1st Cir. 2008) (quoting 8 U.S.C. § 1252(b)(4)(B)). Marín does not make any arguments regarding the BIA's disposition of his CAT claim. We therefore view that claim as abandoned and review only his asylum and withholding of removal claims. See Rotinsulu v. Mukasey, 515 F.3d 68, 71 (1st Cir. 2008).

An asylum applicant bears the burden of proving he is a refugee. See 8 U.S.C. § 1158(b)(1)(A); 8 C.F.R. § 1208.13(a). As defined in INA section 101(a)(42)(A), a refugee is someone "who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, [his or her native country] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C.

§ 1101(a)(42)(A).  "The statute contemplates two approaches which petitioners might pursue to satisfy their burden of proof." Tobón-Marín, 512 F.3d at 31.  First, petitioners may prove that "they have suffered from past persecution on account of one or more of the five grounds enumerated in § 1101(a)(42)(A), which proof would generate a rebuttable presumption that their fear of future persecution is well-founded." Butt v. Keisler, 506 F.3d 86, 90 (1st Cir. 2007) (citation omitted).  Second, petitioners may show that "their fear of future persecution is well founded, viz., that the record evidence demonstrates that they genuinely harbor such a fear, and that it is objectively reasonable." Id. (citation omitted).  Marín has failed to establish either.[3]

## A.  Past Persecution

"[E]stablishing past persecution is a daunting task." Butt, 506 F.3d at 90 (alteration in original) (quoting Alibeaj v. Gonzales, 469 F.3d 188, 191 (1st Cir. 2006)).  "To qualify as persecution, a person's experience must rise above unpleasantness, harassment, and even basic suffering." Nelson v. INS, 232 F.3d 258, 263 (1st Cir. 2000).  In light of this standard, the IJ concluded (and the BIA agreed) that the threats against Marín did

---

[3]  Because "[t]he standard for a grant of asylum is easier to meet than that for nonrefoulment (withholding of deportation)," we need not address the latter claim separately.  See Aguilar-Solís v. INS, 168 F.3d 565, 569 n.3 (1st Cir. 1999).

not rise to the level of persecution. We need not address that basis for the BIA's holding, however, because even if we assume that the threats against Marín did constitute persecution, the BIA's reasonable conclusion that the threats were not motivated by an enumerated statutory ground for relief, but instead by a personal dispute, is dispositive of Marín's claim of past persecution. See Sompotan v. Mukasey, 533 F.3d 63, 71 (1st Cir. 2008) ("Events that stem from personal disputes are generally not enough to show the required nexus.").

We have previously viewed disputes motivated by revenge as personal in nature. See Costa v. Holder, 733 F.3d 13, 17 (1st Cir. 2013) (stating "former police officers [who] were targeted for persecution because of the fact of having served as police officers" could conceivably claim persecution based on a social group but "a former police officer [who was] singled out for reprisal, not because of his status as a former police officer, but because of his role in disrupting particular criminal activity" could not (quoting Matter of C-A-, 23 I. & N. Dec. 951, 958-59 (BIA 2006))). Here, Marín submitted a declaration stating that Cuellar and his fellow officers were angry at Marín and his family for pressing charges. And at his hearing, when asked why Cuellar wanted to kill him, Marín responded, "I don't know. Maybe vengeance? . . . Or, I don't know, maybe he thought that we would

come after him because of the death of my father. I really don't know." Thus, the record adequately supports the IJ's finding -- which the BIA accepted -- that the threats against Marín stemmed not from Marín's kinship ties per se, but rather from what Marín did and Cuellar's desire in response either to "seek retaliation against [Marín]" or to "seek to stop [Marín] because [Cuellar] believes that [Marín's] family may come after him." The mere fact that Cuellar exclusively targeted members of Marín's family does not, as Marín argues, mean that "the only logical inference" is that kinship ties, rather than the desire for retaliation or deterrence, prompted Cuellar's threats.

We additionally reject Marín's claim that the BIA "[c]onflat[ed] the motive for the underlying murder of . . . Mar[í]n-Portillo's father -- a personal dispute -- with the motive for subsequent harm to his family members." As noted above, the IJ identified two motives for Cuellar's threats, neither of which directly pertained to the underlying monetary dispute that prompted Cuellar to kill Marín's father. Therefore, when the BIA affirmed the IJ's finding that "Cuellar appears to be motivated by a personal dispute," there is no reason to doubt that the BIA was referring to the "personal dispute" that the IJ identified -- namely, Cuellar's desire to seek vengeance against Marín for

pressing charges and his desire to prevent Marín from further avenging the murder.

We also reject Marín's contention that our decision in Aldana-Ramos v. Holder, 757 F.3d 9 (1st Cir. 2014), mandates reversal of the BIA's decision. In that case, we reversed the BIA for ignoring the petitioners' argument that, although their persecutors killed the petitioners' father because he was "a wealthy person," the petitioners were targeted, not because of their wealth, but "on account" of their relationship to their father. Id. at 18. We agree with Marín that under Aldana-Ramos, it would be error if the BIA and IJ conflated Cuellar's motive for killing Marín's father with Cuellar's motive for subsequently threatening Marín and his family. But, as stated above, we find no such error in the BIA's analysis.[4] Aldana-Ramos, therefore, does little to help Marín's case.

---

[4] We acknowledge Marín's argument that our jurisprudence about when an asylum applicant is persecuted "on account of" membership in a family unit is not entirely clear. Marín alleges that allowing the BIA's decision to stand would "effectively swallow[] the rule that family membership is a protected social group, because victims of persecution on account of family membership are regularly -- and perhaps invariably -- targeted, whether for retribution or otherwise, because of the actions of another member of their family." We do not intend for this opinion to shed light on the question of whether petitioners may claim persecution on account of family membership when they are targeted as retaliation for the actions of another family member. Marín's case does not raise this question and absent a clear misapplication of law or factual error by the BIA, we do not believe this case is the

Because we find that Cuellar's threats were not motived by a ground enumerated in § 1101(a)(42)(A), we need not reach Marín's argument that the BIA erred by failing to take his age into account when determining whether the threats against him were sufficiently severe to constitute persecution. We affirm only the BIA's finding that there was a lack of nexus between Cuellar's threats and Marín's membership in a protected social group.

## B. Well-Founded Fear of Future Persecution[5]

Our nexus analysis is equally applicable to Marín's future persecution claim. Because Marín fails to establish a nexus between his fear of future persecution and a statutorily protected ground, we reject this claim as well.

## III.

For the foregoing reasons, Marín's petition for review is denied.

**Denied**.

---

appropriate vehicle to clear up this area of the law.

[5] Marín argues that the BIA never addressed whether he had a well-founded fear of future persecution. We disagree with Marín's contention because the BIA's nexus analysis resolves both his past and future persecution claims.