# United States Court of Appeals
## For the First Circuit

No. 23-1166

MARIELA GRICELDA CHUN MENDEZ; Y.Y.C.,

Petitioners,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Gelpí, Howard, and Rikelman,
Circuit Judges.

Daniel T. Welch, with whom Kevin P. MacMurray and MacMurray & Associates were on brief, for petitioners.

Remi Da Rocha-Afodu, Trial Attorney, U.S. Department of Justice, Civil Division, Office of Immigration Litigation, with whom Bryan M. Boynton, Principal Deputy Assistant Attorney General, Civil Division, and David J. Schor, Senior Litigation Counsel, Office of Immigration Litigation, were on brief, for respondent.

March 15, 2024

**GELPÍ**, **Circuit Judge**.  Lead petitioner Mariela Gricelda Chun Mendez ("Chun Mendez") and her minor son, natives and citizens of Guatemala, petition for review of the final order of the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") denial of asylum and withholding of removal under the Immigration and Nationality Act ("INA") and protection under the Convention Against Torture ("CAT").  Chun Mendez challenges the BIA's affirmance of the IJ's findings that she failed to establish extraordinary circumstances to excuse the late filing of her asylum application and that she failed to establish eligibility for withholding of removal because she did not demonstrate that she was a member of the particular social group that she had delineated to the agency.  After careful review, we deny the petition.

## I. BACKGROUND

### A. Factual Background

We derive the following facts from the administrative record, including Chun Mendez's testimony before the IJ, which the IJ found credible.  See Adeyanju v. Garland, 27 F.4th 25, 31 (1st Cir. 2022) (citing Martínez-Pérez v. Sessions, 897 F.3d 33, 37 n.1 (1st Cir. 2018)).

Chun Mendez was born in Ixchiguán, Guatemala, and is an indigenous woman of Mam descent.  While in Ixchiguán, she lived with her grandmother in the village of Buena Vista Nuevos Horizontes ("Nuevos Horizontes").  Her grandmother owns the house

in which they lived, a house that has been in Chun Mendez's family for "a long time."

In November 2013, Chun Mendez fled Guatemala with her minor son to escape ongoing violence between Nuevos Horizontes and the neighboring municipality of Tajumulco over land and water rights. Chun Mendez testified that, "every month or two," people from Tajumulco went to Nuevos Horizontes and fired shots at the villagers there with the intention of "get[ting them] out of" Nuevos Horizontes, claiming that the land was theirs. When the shootings occurred, Chun Mendez and other Nuevos Horizontes villagers were forced to temporarily flee to neighboring villages. When Chun Mendez returned to her grandmother's house, she would find the house empty and her belongings destroyed. Chun Mendez testified that she heard that "people who did not escape during the attacks were tied up and tortured, or shot to death by the people of Tajumulco." The people of Tajumulco also deprived Nuevos Horizontes of water by cutting off the village's water supply.

On or around December 5, 2013, Chun Mendez and her minor son entered the United States at or near Hidalgo, Texas, without being admitted or paroled after inspection by an immigration officer. Shortly after their entry, Department of Homeland Security officials apprehended and subsequently issued them individual Notices to Appear. Chun Mendez and her minor son were charged with removability under 8 U.S.C. § 1182(a)(6)(A)(i) for

being present in the United States without being admitted or paroled, or for entering the United States at any time or place other than as designated by the Attorney General. They conceded removability as charged.

On March 1, 2016, Chun Mendez filed a Form I-589 application for asylum, withholding of removal, and protection under the CAT, including her minor son as a derivative applicant.[1] She sought asylum and withholding of removal based on (1) her membership in the particular social group ("PSG") of "communal landowners of Ixchiguán, Guatemala that refused to cooperate with criminal gangs" and (2) "her race as an indigenous woman of Mam descent."[2] Chun Mendez testified that she did not file her asylum application within the first year of arrival in the United States because she was suffering from headaches, nausea, and dizziness, and became pregnant with her second child after her arrival. She further testified that she began therapy around 2015 as a result of her experiences in Guatemala. She explained that, when she

---

[1] Chun Mendez's minor son also filed a separate Form I-589 application for asylum, withholding of removal, and protection under the CAT, based on the same underlying facts as Chun Mendez's application. See 8 U.S.C. § 1158(b)(3)(A). Chun Mendez, however, was the lead respondent before the agency, and the only one who testified in support of the applications.

[2] In their Form I-589 applications, Chun Mendez and her minor son also indicated that they sought asylum and withholding of removal based on their political opinion. This claim, however, was not developed before the agency and is not at issue before us.

arrived in the United States, she was "dealing with these issues and trying to seek medical treatment," and was unaware of the asylum application process.  Chun Mendez presented medical records detailing her diagnoses for tension-type headaches, vestibular dizziness, anxiety disorder, and mild recurrent major depression.

## B. Procedural Background

On July 16, 2019, the IJ issued a written decision denying Chun Mendez's application for asylum, withholding of removal, and protection under the CAT.[3]  First, after finding that Chun Mendez had testified credibly, the IJ addressed the timeliness of her asylum application.  The IJ determined that Chun Mendez had not filed her asylum application within one year of her arrival in the United States.  The IJ then acknowledged Chun Mendez's testimony that she suffered from headaches, nausea, and dizziness, and that she became pregnant with her second child after arriving in the United States.  The IJ then stated that "[w]hile serious illness, mental health issues, or physical conditions may amount to extraordinary circumstances that will excuse late filing [of an asylum application], [Chun Mendez's] health conditions in this

---

[3] This written decision followed the IJ's September 2017 oral decision denying Chun Mendez's application for asylum, withholding of removal, and protection under the CAT, which Chun Mendez appealed to the BIA, arguing that the IJ issued an insufficient decision.  In September 2018, the BIA found that the oral decision "provide[d] an insufficient basis upon which the [BIA] c[ould] adequately conduct a meaningful review" and remanded the proceedings to the IJ.

case [we]re not severe enough to have prevented her from filing her asylum application in a timely manner." The IJ found that Chun Mendez "was able to travel to and from appointments and . . . was not incapacitated or otherwise prevented from seeking out an attorney or filing her application for asylum." The IJ finally concluded that "[Chun Mendez's] medical issues and child rearing d[id] not amount to extraordinary circumstances" that excused the late filing of her asylum application.

Second, the IJ determined that, "[e]ven if [Chun Mendez] had timely filed her application for asylum," her experiences in Guatemala did not rise to the level of past persecution. The IJ stated that "persecution does not encompass generally harsh conditions shared by many others in a country, or the harm an individual may experience as a result of generalized violence stemming from civil strife or conflict." The IJ then concluded that, because Chun Mendez's "experiences [in Ixchiguán] stem[med] from the land and water disputes impacting everyone in the region," her "experiences of suffering from civil conflict d[id] not rise to the level of past persecution."

Third, the IJ found that Chun Mendez had not established a well-founded fear of future persecution on account of a protected ground. The IJ first addressed Chun Mendez's claimed membership in the PSG of "communal landowners of Ixchiguán, Guatemala that refused to cooperate with criminal gangs." After assuming without

deciding that the PSG was cognizable, the IJ nonetheless found that because Chun Mendez "testified that she [was] not a landowner and that her grandmother owns the house in Ixchiguán, and there is insufficient evidence in the record that [Chun Mendez] has communal ownership of the land," Chun Mendez had not established membership in the PSG.  The IJ further determined that, even if Chun Mendez had established membership in the PSG, she "ha[d] not established an objectively reasonable fear of persecution."

The IJ then turned to Chun Mendez's claim of having a well-founded fear of persecution on account of her race as an indigenous woman of Mam descent and found that she "ha[d] not demonstrated that [she] would be singled out for persecution or that there is a pattern or practice of persecuting individuals of [her] race."  The IJ noted that the evidence in the record, as well as Chun Mendez's testimony, "indicate[d] that the harm [she] fear[s] is on account of a decade's old land and resources dispute" and is not motivated, at least in part, by her race.  Thus, the IJ denied Chun Mendez's application for asylum.

The IJ then addressed Chun Mendez's withholding of removal claim.  The IJ found that because Chun Mendez had failed to demonstrate statutory eligibility for asylum, she was "unable to satisfy [her] burden under the stricter more likely than not standard for withholding of removal," noting that Chun Mendez's "withholding of removal claim[] suffer[ed] from the same defects

as [her] asylum claim." Thus, the IJ denied Chun Mendez's application for withholding of removal. Finally, the IJ also denied Chun Mendez's request for protection under the CAT, finding that neither her testimony nor the record support the conclusion that it is more likely than not that Chun Mendez would be tortured by the Guatemalan government.

On August 16, 2019, Chun Mendez appealed the IJ's decision to the BIA. In her brief to the BIA, Chun Mendez first argued that the IJ erred in determining that she failed to establish extraordinary circumstances that excused the late filing of her asylum application. Specifically, Chun Mendez argued that she "clearly had a serious mental illness that rises to the level of an extraordinary circumstance," and that she "had suffered from severe headaches and dizziness that severely affected her ability to function."

Chun Mendez then argued that the IJ erred in finding that she was not a member of the PSG. She again defined the PSG as "communal landowners of Ixchiguán, Guatemala that refused to cooperate with criminal gangs." She asserted that because she "refused to surrender [her] land and home[] to the criminal gangs of Tajumulco," she had "acquired an immutable characteristic of being a communal landowner that refused to cooperate with criminal gangs." Finally, Chun Mendez argued that she had demonstrated harm that amounted to past persecution, and that she had similarly

established a well-founded fear of persecution on account of her membership in the PSG.

On January 20, 2023, the BIA dismissed Chun Mendez's appeal. As to the extraordinary circumstances claim, the BIA determined that Chun Mendez's mental health conditions "d[id] not qualify as an extraordinary circumstance." The BIA adopted the IJ's findings that Chun Mendez "was able to travel to and from appointments and was not incapacitated or otherwise prevented from seeking out an attorney or filing" her asylum application, concluded that Chun Mendez had not established that her mental health conditions directly related to her failure to file her asylum application in a timely manner, and subsequently dismissed Chun Mendez's asylum claim.

The BIA then affirmed the IJ's finding that Chun Mendez had not established eligibility for her PSG-based withholding of removal claim. Specifically, the BIA adopted the IJ's finding that Chun Mendez was not a member of the PSG because she had testified to not being a landowner, her grandmother owned the house in Ixchiguán, and there was no evidence in the record that Chun Mendez had communal ownership of the land.

The BIA then noted that, on appeal, Chun Mendez "d[id] not address her claim to have suffered past persecution and have a well-founded fear of future persecution on account of her race, as an indigenous woman of Mam descent," and thus found the claim

to be waived.  Finally, the BIA stated that because Chun Mendez had not established membership in the PSG, and "ha[d] not claimed past harm or fear of future harm based on any other protected ground on appeal," it would not address additional arguments related to Chun Mendez's eligibility for withholding of removal.

Chun Mendez timely filed this petition for review.[4]

## II. DISCUSSION

### A. Standard of Review

"We review the BIA's decision in this case as the agency's final decision and look to the IJ's decision only 'to the extent that the BIA deferred to or adopted the IJ's reasoning.'" Mendez v. Garland, 67 F.4th 474, 481 (1st Cir. 2023) (quoting Chavez v. Garland, 51 F.4th 424, 429 (1st Cir. 2022)).  We review factual findings under the substantial evidence standard, Sanchez-Vasquez v. Garland, 994 F.3d 40, 46 (1st Cir. 2021), upholding the "findings unless the record compels a contrary conclusion," Espinoza-Ochoa v. Garland, 89 F.4th 222, 230 (1st Cir. 2023) (citing Varela-Chavarria v. Garland, 86 F.4th 443, 449 (1st Cir. 2023)).  We review legal conclusions de novo, "giving deference to the agency's reasonable interpretation of the

---

[4] On appeal to the BIA, Chun Mendez did not challenge the IJ's denial of her request for protection under the CAT and does not develop any arguments as to this claim before us.  Thus, we focus on her asylum and withholding of removal claims.  Cf. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

statutes and regulations within its purview." Gonzalez v. Holder, 673 F.3d 35, 38 (1st Cir. 2012) (citing Castañeda-Castillo v. Holder, 638 F.3d 354, 362 (1st Cir. 2011)).

## B. Legal Framework

### 1. Asylum

An applicant for asylum must establish that she is a "refugee" within the meaning of the INA. 8 U.S.C. § 1158(b)(1)(A)-(B)(i). The INA defines "refugee" as someone who is unable or unwilling to return to and to avail herself of the protection of her country of nationality "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The protected ground must "be at least one central reason for [the] persecuti[on]." 8 U.S.C. § 1158(b)(1)(B)(i).

### 2. Withholding of Removal

To be eligible for withholding of removal, "the burden is even higher." Valera-Chavarria, 86 F.4th at 449. The applicant must show that her "life or freedom would be threatened in th[e] country [of removal] because of [her] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). Specifically, the applicant "must establish a clear probability that, if returned to h[er] homeland, [s]he will be persecuted on account of a statutorily protected

ground."  Sanchez-Vasquez, 994 F.3d at 46.  Because of "the substantive similarities in the standards for asylum and withholding of removal claims," Espinoza-Ochoa, 89 F.4th at 230, "'asylum precedents may be helpful in analyzing withholding-of-removal cases,' and vice versa," Barnica-Lopez v. Garland, 59 F.4th 520, 528 (1st Cir. 2023) (quoting Sanchez-Vasquez, 994 F.3d at 46).

## C. Timeliness of Asylum Application

We begin with the government's contention that we lack jurisdiction to review the denial of Chun Mendez's asylum application as untimely.  Ordinarily, an asylum applicant must "demonstrate[] by clear and convincing evidence that the application has been filed within [one] year after the date of the [applicant's] arrival in the United States."  8 U.S.C. § 1158(a)(2)(B).  Untimely applications, however, may be considered if the applicant demonstrates "either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application."  8 U.S.C. § 1158(a)(2)(D).  To demonstrate extraordinary circumstances, the applicant must establish (1) "that the circumstances were not intentionally created by the [applicant through her] own action or inaction," (2) "that those circumstances were directly related to the [applicant's] failure to file the application within the [one-year

deadline]," and (3) "that the delay was reasonable under the circumstances." 8 C.F.R. § 1208.4(a)(5).

We have recognized that "Congress has 'carefully circumscribed the scope of judicial review with respect to timeliness determinations in asylum cases.'" Ixcuna-Garcia v. Garland, 25 F.4th 38, 44 (1st Cir. 2022) (quoting Pan v. Gonzales, 489 F.3d 80, 84 (1st Cir. 2007)). The relevant statute provides that "[n]o court shall have jurisdiction to review any determination of the Attorney General" concerning, among other things, the timeliness of an asylum application and whether an applicant demonstrated extraordinary circumstances related to the delay in filing the application. 8 U.S.C. § 1158(a)(3). This jurisdictional bar, however, does not "preclud[e] review of constitutional claims or questions of law raised upon a petition for review." 8 U.S.C. § 1252(a)(2)(D). Accordingly, the "key that [would] unlock[] federal court review in [this] case[] is a 'colorable' constitutional or legal question that is not simply a 'thinly-veiled challenge to the [agency's] factfinding.'" Ixcuna-Garcia, 25 F.4th at 44-45 (quoting Pan, 489 F.3d at 84).

Here, Chun Mendez contends that the agency did not apply the correct legal standard under 8 C.F.R. § 1208.4(a)(5) to her extraordinary circumstances claim because "both the [IJ] and the [BIA] failed to assess the totality of the circumstances faced by [Chun Mendez] upon entry, instead assessing the mental health and

[physical] medical circumstances separately."  As support for her argument, Chun Mendez calls our attention to Guerrero-Lasprilla v. Barr, 598 U.S. 221 (2020), in which the Supreme Court found that the phrase "questions of law" in 8 U.S.C. § 1252(a)(2)(D) includes the application of a legal standard to undisputed or established facts, id. at 225.

While we "typically cannot apply 'hypothetical jurisdiction' in terms of Article III jurisdiction, we can sidestep statutory jurisdiction when, as here, it makes sense to do so because the resolution on the merits of the case is straightforward."  Tacuri-Tacuri v. Garland, 998 F.3d 466, 472 (1st Cir. 2021) (citing Alvarado v. Holder, 743 F.3d 271, 276 (1st Cir. 2014)).  Thus, we bypass the jurisdictional question concerning Chun Mendez's extraordinary circumstances claim, and turn to the merits of Chun Mendez's asylum and withholding of removal claims.

### D. PSG-Based Claims

Chun Mendez argues that the BIA erred in upholding the IJ's determination that she was not a member of the PSG of "communal landowners of Ixchiguán, Guatemala that refused to cooperate with criminal gangs."  Specifically, while Chun Mendez concedes that she "did not in fact communally own the land," she

advances that both the IJ and BIA "failed to consider that th[e] membership was imputed on [Chun Mendez] by her persecutors."

We agree with the government that Chun Mendez has not exhausted this claim of imputed membership. "Where an applicant raises membership in a particular social group as the enumerated ground that is the basis of her claim, she has the burden to clearly indicate 'the exact delineation of any particular social group(s) to which she claims to belong.'" Matter of W-Y-C- & H-O-B-, 27 I. & N. Dec. 189, 191 (B.I.A. 2018) (quoting Matter of A-T-, 25 I. & N. Dec. 4, 10 (B.I.A. 2009)). Importantly, "theories not advanced before the BIA may not be surfaced for the first time in a petition for judicial review of the BIA's final order." Makhoul v. Ashcroft, 387 F.3d 75, 80 (1st Cir. 2004) (first citing Ravindran v. INS, 976 F.2d 754, 761 (1st Cir. 1992); and then citing Alvarez-Flores v. INS, 909 F.2d 1, 8 (1st Cir. 1990)); 8 U.S.C. § 1252(d)(1) (stating that "[a] court may review a final order of removal only if . . . the [petitioner] has exhausted all administrative remedies available to the [petitioner] as of right").

Chun Mendez did not raise a theory of imputed membership before the IJ, nor did she do so before the BIA. Instead, in her brief to the BIA, Chun Mendez argued only that she had "acquired an immutable characteristic of being a communal landowner . . . and therefore[ was] a member of [the PSG]."

Accordingly, because Chun Mendez surfaces her theory of imputed membership for the first time in the petition for judicial review, this claim is unexhausted. See 8 U.S.C. § 1252(d)(1); Makhoul, 387 F.3d at 80; see also Granada-Rubio v. Lynch, 814 F.3d 35, 38-39 (1st Cir. 2016) (per curiam) (finding PSG unexhausted where petitioner argued to the BIA that "the MS-13 is targeting her because they know that she is married to a man who is living and working in the United States" but argued to us that she was "a member of a particular social group of women with children whose husband[s] live and work in the U.S. and it is known to society as a whole that the husbands live in the U.S.").

Chun Mendez's concession that she was not a communal landowner and failure to administratively exhaust her imputed membership claim necessarily disposes of her PSG-based asylum and withholding of removal claims. See 8 U.S.C. §§ 1101(a)(42)(A), 1231(b)(3)(A); see also Varela-Chavarria, 86 F.4th at 452. Thus, we need not address her remaining arguments as to these claims.

### E. Race-Based Claims

Finally, Chun Mendez argues that the IJ and the BIA failed to meaningfully assess her asylum and withholding of removal claims on account of her race as an indigenous woman of Mam descent.[5] The IJ, however, did consider Chun Mendez's race-based

---

[5] In her brief to us, Chun Mendez refers to this race-based ground as "membership in the cognizable social group of Indigenous

claims.  And we agree with the government that these race-based claims are unexhausted, as Chun Mendez did not raise any race-based claim before the BIA, which she concedes.  See 8 U.S.C. § 1252(d)(1); Makhoul 387 F.3d at 80.  Chun Mendez, however, seeks to sidestep this conclusion by citing United States v. Olano, 507 U.S. 725 (1993), for the proposition that we possess the authority to correct certain alleged errors that were not timely raised in front of the agency.  But this argument misunderstands our role as a reviewing court under the INA.  See Garland v. Ming Dai, 593 U.S. 357, 366-67 (2021).  "Because the government has raised the exhaustion requirement and because [Chun Mendez] failed to argue before the BIA that [she was entitled to asylum and withholding of removal on her race-based claims], we find that such an argument is unexhausted.  We therefore decline to consider it."  Odei v. Garland, 71 F.4th 75, 78 n.1 (1st Cir. 2023) (citing 8 U.S.C. § 1252(d)(1)).

### III. CONCLUSION

For the foregoing reasons, we **deny** the petition for review.

---

Guatemalan Female[s] of Mam descent."  The record and other parts of her brief, however, suggest that she refers to the only race-based ground presented to the agency: "race as an indigenous woman of Mam descent."