# United States Court of Appeals
## For the First Circuit

No. 23-1341

HENRY DONALDO GONZALEZ-AREVALO,

Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Gelpí, Selya, and Thompson,
<u>Circuit Judges</u>.

<u>Randy Olen</u> for petitioner.

<u>Brandon T. Callahan</u>, Trial Attorney, U.S. Department of Justice, Civil Division, Office of Immigration Litigation, with whom <u>Brian M. Boynton</u>, Principal Deputy Assistant Attorney General, Civil Division, and <u>Jennifer R. Khouri</u>, Senior Litigation Counsel, Office of Immigration Litigation, were on brief, for respondent.

August 7, 2024

**GELPÍ**, **Circuit Judge**.  Petitioner Henry Donaldo Gonzalez-Arevalo ("Gonzalez-Arevalo"), a native and citizen of Guatemala, petitions for review of a final order of the Board of Immigration Appeals ("BIA") affirming the immigration judge's ("IJ") denial of his request for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").  The BIA and IJ (collectively, "the agency") found, in part, that Gonzalez-Arevalo failed to prove that he was persecuted "on account of" a statutorily protected ground.  8 U.S.C. § 1101(a)(42)(A). That finding was supported by substantial evidence, and Gonzalez-Arevalo's arguments to the contrary are unpersuasive.  We deny his petition.

## I. BACKGROUND

We draw our background "from the administrative record, including [Gonzalez-Arevalo's] testimony before the IJ, which the IJ found credible."  Chun Mendez v. Garland, 96 F.4th 58, 61 (1st Cir. 2024).

### A. Underlying Facts

Gonzalez-Arevalo is a thirty-eight-year-old native and citizen of Guatemala.  He entered the United States without authorization in 2003, returned to Guatemala in 2010, and reentered the United States without authorization in 2012.  Immigration officials detained him in January 2012.  On February 24, 2012, an asylum officer conducted a credible fear interview with

- 2 -

Gonzalez-Arevalo and determined that he had established a credible fear of persecution in Guatemala. In the interview, Gonzalez-Arevalo explained that he feared harm because the relatives of the man who murdered his father and uncle believed that Gonzalez-Arevalo was responsible for the man's incarceration.

The Department of Homeland Security ("DHS") served Gonzalez-Arevalo on February 27, 2012, with a Notice to Appear in immigration court. DHS charged him with removability as a noncitizen not in possession of a valid entry document, 8 U.S.C. § 1182(a)(7)(A)(i)(I). He admitted those allegations and conceded his removability on June 9.

He then applied for asylum, withholding of removal, and CAT protection on December 18. He based his application in part on his membership in a particular social group ("PSG") and explained that his "father was killed by a local criminal gang." According to Gonzalez-Arevalo, this gang also "chased [him] with guns" and "set fire to [his] car." He remained "afraid that the gang [would] kill [him] for reprisal because the leader served some time in jail."

He explained in an affidavit supporting his application that, when he was a child, a local gang leader known as "El Vicioso" ("the vicious one") and two or three other individuals murdered his father and uncle in a home invasion in Guatemala in 1988. El Vicioso was imprisoned, but Gonzalez-Arevalo remained afraid of El

Vicioso's family, who still live in Guatemala. Gonzalez-Arevalo also described how unknown gang members in Guatemala killed his two cousins and a family friend.

Gonzalez-Arevalo testified further about these experiences at a hearing before the IJ on July 23, 2019.[1] He described his proposed PSG as "Guatemalan males who, and whose family, have suffered past persecution by means of murder of the father of the family by gangs." "[T]he family of those two that are incarcerated" for his father and uncle's murder, he explained, "think that [he and his family] are at fault for that, so . . . that's the reason why the problems have continued." Indeed, he clarified that El Vicioso's relatives "think that [he and his family] did that to him." Gonzalez-Arevalo explained that one of the killers was a member of his own family, and his father and uncle's murder was in "vengeance" for some previous slight.

Gonzalez-Arevalo also detailed the attacks in 2010 in Guatemala that grounded his asylum application:

- Car explosion: While driving through Guatemala City, Gonzalez-Arevalo left his car to buy something. The car then exploded. Police officers investigating the explosion told Gonzalez-Arevalo that they suspected that something was placed inside the car to cause the explosion.

---

[1] Gonzalez-Arevalo's hearing was originally scheduled for May 6, 2014. He failed to appear, so the IJ ordered him removed in absentia. However, on October 1, 2014, the IJ granted Gonzalez-Arevalo's motion to reopen the case. After several extensions, the IJ finally held the hearing on July 23, 2019.

- Wedding Attack: Gonzalez-Arevalo went to a wedding in Guatemala. Some men learned that he would attend and, with the intent to attack him, went to the wedding. Armed with guns, they chased him from the wedding.

Gonzalez-Arevalo did not know the names of the individuals who attacked him. Nor was he aware of how many people were responsible for either attack.

The IJ inquired more about the motivations of Gonzalez-Arevalo's attackers. She asked if he believed that these incidents happened "because [his] father's murderers were sent to jail," and he agreed with that characterization. With that, she then asked if his "problems in Guatemala . . . were because of reprisals" from El Vicioso's incarceration and if Gonzalez-Arevalo feared future harm "because of these reprisals." He answered, "Yes," to both questions.

## B. Procedural History

The IJ denied Gonzalez-Arevalo's application. First finding him credible, the IJ determined that Gonzalez-Arevalo's "experiences in Guatemala d[id] not rise to the level of persecution." Nor was his proposed PSG cognizable. Even if he met these requirements, the IJ stated that "fear of retribution over personal matters is not a basis for asylum." She concluded that his alleged persecutors were motivated by vengeance for the incarceration of the murderers. That personal motivation meant that the attacks were not on account of a statutorily protected

ground, so his experiences in Guatemala could not ground a past or future persecution claim. Because his asylum claim faltered, the IJ denied his withholding of removal claim.[2]

Gonzalez-Arevalo appealed to the BIA. He challenged the IJ's conclusion that his proposed PSG, which he described on appeal as "Guatemalan males whose family and whom have suffered past persecution, including murder, at the hands of criminal gangs,"[3] was inadequate and that he did not show persecution. He also challenged the IJ's conclusion that he was targeted for retribution.

The BIA affirmed. It adopted the IJ's reasoning and supplemented her conclusion that Gonzalez-Arevalo did not show that a protected ground "was or will be at least one central reason for his persecution." The BIA noted that, although "the presence of a non-protected motivation does not render the applicant ineligible for asylum," a "central" reason is not "merely

---

[2] The IJ also denied his CAT claim. Gonzalez-Arevalo neither appealed that claim to the BIA nor asked us to review it. It is, therefore, waived. See Jimenez-Portillo v. Garland, 56 F.4th 162, 165 (1st Cir. 2022).

[3] Gonzalez-Arevalo's PSG in his Notice of Appeal to the BIA was "Guatemalan males whose family have suffered past persecution by virtue of multiple murders by gangs and political opinion, belief in the rule of law." That PSG matched his asylum application, where he claimed asylum based on his political opinion and PSG membership. He did not raise any claim concerning his "political opinion" in his brief to us. He thus waived any argument concerning this point. See Berrio-Barrera v. Gonzales, 460 F.3d 163, 168 (1st Cir. 2006).

- 6 -

incidental (i.e., minor, casual, or subordinate) or tangential (i.e., superficially relevant)." The BIA then cited Gonzalez-Arevalo's testimony describing the 2010 attacks as "reprisal" for his father and uncle's murderers' incarceration. With that record support, the BIA concluded that the IJ did not clearly err when she found that family membership was not one central reason for these attacks.

This timely petition for judicial review, over which we have jurisdiction, followed. 8 U.S.C. § 1252(a)(1).

## II. DISCUSSION

### A. Legal Standards

"Where, as here, the BIA adopts and affirms the IJ's ruling but nevertheless examines some of the IJ's conclusions, we review both the BIA and IJ opinions as a unit." Barnica-Lopez v. Garland, 59 F.4th 520, 527 (1st Cir. 2023) (cleaned up) (citation omitted) (quoting Gómez-Medina v. Barr, 975 F.3d 27, 31 (1st Cir. 2020)). And, as here, "[w]e evaluate 'the IJ's decision to the extent of the adoption, and the BIA's decision as to [any] additional ground.'" Esteban-Garcia v. Garland, 94 F.4th 186, 190-91 (1st Cir. 2024) (second alteration in original) (quoting López-Pérez v. Garland, 26 F.4th 104, 110 (1st Cir. 2022)).

We review the agency's legal conclusions de novo. Chun Mendez, 96 F.4th at 64. But we review its factual findings under the substantial evidence standard. Id. Under this highly

deferential standard, "we will only disturb the agency's findings if, in reviewing the record as a whole, 'any reasonable adjudicator would be compelled to conclude to the contrary.'" Barnica-Lopez, 59 F.4th at 527 (quoting Gómez-Medina, 975 F.3d at 31). "That the record supports a conclusion contrary to that reached by the [agency] is not enough to warrant upsetting the [agency's] view of the matter; for that to occur, the record must compel the contrary conclusion." Santos Garcia v. Garland, 67 F.4th 455, 460-61 (1st Cir. 2023) (quoting Hincapie v. Gonzales, 494 F.3d 213, 218 (1st Cir. 2007)).

Under the INA, an asylum applicant must prove that he is a "refugee," someone "who is unable or unwilling to return to" his country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a [PSG], or political opinion." 8 U.S.C. § 1101(a)(42)(A). Persecution in this sense "requires proof of 'a certain level of serious harm (whether past or anticipated), a sufficient nexus between that harm and government action or inaction, and a causal connection to one of th[ose] statutorily protected grounds.'" Barnica-Lopez, 59 F.4th at 527 (quoting Martínez-Pérez v. Sessions, 897 F.3d 33, 39 (1st Cir. 2018)).

To establish eligibility for withholding of removal due to persecution, the applicant must show the same elements as required for the asylum claim but his "burden is even higher."

Chun Mendez, 96 F.4th at 64 (quoting Varela-Chavarria v. Garland, 86 F.4th 443, 449 (1st Cir. 2023)). An applicant must show "a clear probability that, if returned to his homeland, he will be persecuted on account of a statutorily protected ground." Barnica-Lopez, 59 F.4th at 527 (quoting Sanchez-Vasquez v. Garland, 994 F.3d 40, 46 (1st Cir. 2021)). "[T]he substantive similarities in the standards for asylum and withholding of removal claims" make it so that "asylum precedents may be helpful in analyzing withholding-of-removal cases, and vice versa." Espinoza-Ochoa v. Garland, 89 F.4th 222, 230 (1st Cir. 2023) (internal quotation marks omitted) (quoting Barnica-Lopez, 59 F.4th at 528).

## B. Asylum Claim

Gonzalez-Arevalo targets the agency's findings on all fronts: that he did not prove harm rising to the level of persecution, articulate a cognizable PSG, or establish a nexus between the harm he suffered and a protected ground. The government contests every point. In part, it argues that the PSG he raised before the agency was impermissibly circular and that his PSG on appeal of "membership in the Gonzalez-Arevalo family" is unexhausted. Yet it also suggests that we can affirm on the independent, "[d]ispositive" basis that Gonzalez-Arevalo failed to meet his burden to prove a nexus between the harm he suffered and a protected ground.

- 9 -

"For both past and future persecution claims, '[a]n inability to establish any one of the three elements of persecution will result in a denial of [the] asylum application.'" Esteban-Garcia, 94 F.4th at 191 (alterations in original) (quoting Aguilar-De Guillen v. Sessions, 902 F.3d 28, 33 (1st Cir. 2018)). We assume without deciding that his PSG is "membership in the Gonzalez-Arevalo family," that this social group is cognizable and exhausted, and that his alleged instances of persecution rise to a certain level of serious harm. See Cabrera v. Garland, 100 F.4th 312, 321 (1st Cir. 2024) (assuming that the petitioner's proposed social group was, as he claimed, "small business owners" and that he exhausted this group because his asylum claim was still "without merit" (quoting Reyes Pujols v. Garland, 37 F.4th 1, 5 (1st Cir. 2022))). To resolve this petition for review, we turn to the nexus requirement.

### 1. Nexus to a Protected Ground

"To meet the nexus requirement, the petitioner must have provided sufficient evidence of an actual connection between the harm she suffered and her protected trait." Esteban-Garcia, 94 F.4th at 192 (cleaned up) (quoting Ivanov v. Holder, 736 F.3d 5, 12 (1st Cir. 2013)). "A causal connection between the harm incurred and the petitioner's statutorily protected ground exists only if the protected ground 'was "one central reason" for the harm alleged.'" Odei v. Garland, 71 F.4th 75, 79 (1st Cir. 2023)

(quoting Sanchez-Vazquez, 994 F.3d at 47); see 8 U.S.C. § 1158(b)(1)(B)(i). The "one central reason" standard recognizes that persecutors "may have more than one motivation." Barnica-Lopez, 59 F.4th at 528 (quoting Singh v. Mukasey, 543 F.3d 1, 5 (1st Cir. 2008)). So, "[t]he statutorily protected ground need not be the sole factor driving the alleged persecution." Odei, 71 F.4th at 79 (quoting Barnica-Lopez, 59 F.4th at 528).

Still, Gonzalez-Arevalo must prove that his proposed social group "was not 'incidental, tangential, superficial, or subordinate to another reason for [the] harm.'" Espinoza-Ochoa, 89 F.4th at 235 (alteration in original) (quoting Barnica-Lopez, 59 F.4th at 531). In other words, Gonzalez-Arevalo's family membership "must be at the root of the persecution, so that family membership itself brings about the persecutorial conduct." Barnica-Lopez, 59 F.4th at 530 (quoting Ruiz-Escobar v. Sessions, 881 F.3d 252, 259 (1st Cir. 2018)). We have been clear that the mere fact that persecutors targeted family members "does not convert [a] non-protected criminal motivation into persecution on the basis of family connections." Loja-Tene v. Barr, 975 F.3d 58, 62 (1st Cir. 2020) (quoting Aldana-Ramos v. Holder, 757 F.3d 9, 19 (1st Cir. 2014)). So, to draw the line, we ask "whether it is possible to disentangle the applicant's family status from the persecutor's other motives, or if they are two sides of the same

coin."  Ferreira v. Garland, 97 F.4th 36, 47 (1st Cir. 2024) (internal quotation marks and citation omitted).

To prevail below, Gonzalez-Arevalo needed to "provide some evidence to establish that [his family membership] was at least one central reason."  Esteban-Garcia, 94 F.4th at 192 (internal quotation marks and citations omitted).  We review the agency's contrary finding under the substantial-evidence standard. See Barnica-Lopez, 59 F.4th at 530.

Gonzalez-Arevalo first argues that the record does not support the agency's finding that his family membership was subordinate to his alleged persecutors' desire for reprisal for the incarceration.  Not so.  "[E]vents that stem from personal disputes are generally not enough to show the required nexus between past harm and a protected ground," and "disputes motivated by revenge [are] personal in nature."  Id. at 531 (internal quotation marks and citations omitted).  Gonzalez-Arevalo testified that his persecutors attacked him because they believed that he was "at fault" for the incarceration.  And he agreed with the IJ that the 2010 attacks were "reprisals" for that incarceration.  Even in his asylum application and credible fear interview, Gonzalez-Arevalo explained that he feared reprisal because his persecutors believed that he was responsible for El Vicioso's incarceration.  The record therefore supports the agency's finding that Gonzalez-Arevalo's family membership was

- 12 -

"incidental or subordinate to [his] assailants' vengeful purpose." Id.

Although Gonzalez-Arevalo contends that his family members' deaths and the 2010 attacks in Guatemala compelled a contrary conclusion, we are unpersuaded. "[I]t is not enough merely to show that multiple members of a single family had negative experiences" when nothing in the record "causally link[s]" those experiences and family membership. Ruiz v. Mukasey, 526 F.3d 31, 38 (1st Cir. 2008). "And when an asylum-seeker does not 'know[] who was responsible' for a killing, 'it is no more than a guess that a nexus existed between the [killing] and a statutorily protected ground.'" Jimenez-Portillo, 56 F.4th at 168-69 (alterations in original) (quoting López-Castro v. Holder, 577 F.3d 49, 53 (1st Cir. 2009)). Gonzalez-Arevalo could not offer any details about his alleged persecutors in Guatemala. Nor could he say who killed his cousins and family friend or why, stating only that gang violence in Guatemala -- without linking that violence to their shared kinship or even El Vicioso's incarceration -- caused their deaths. All he could do was "guess" that these deaths and attacks were connected to family membership. Id. at 169 (quoting López-Castro, 577 F.3d at 53). That is not enough to compel a reasonable adjudicator to reach a contrary conclusion. See id. at 168-69.

- 13 -

Gonzalez-Arevalo also claims that his testimony was "speculati[ve]" and implies that the agency needed to rely on other evidence to establish that family membership was subordinate to his persecutors' desire for vengeance. We reject this argument. The agency may rely upon the credible testimony of an asylum-seeker in analyzing an asylum claim. See Barnica-Lopez, 59 F.4th at 531 (affirming the agency's finding that family membership was incidental to revenge in motivating persecution where the petitioners "consistently testified that they believed they were threatened because an associate had shot one of the assailants"); Esteban-Garcia, 94 F.4th at 192-93 (affirming the agency's finding that the petitioner's ethnicity did not motivate persecution where she testified that her persecutors pressured her into prostitution for financial gain); Ferreira, 97 F.4th at 47 (affirming the agency's finding that the petitioner's family membership did not motivate her persecution based in part on her testimony that her uncle "was motivated by his own criminal, sexual desires"). And even assuming for argument's sake that Gonzalez-Arevalo's testimony was "speculati[ve]," he would not prevail. "He present[ed] no evidence other than" that "speculation" -- coupled with the unconnected deaths of family members -- "to link" his harm to his family membership. Khalil v. Ashcroft, 337 F.3d 50, 55 (1st Cir. 2003). Either way, the agency's no-nexus finding stands.

Gonzalez-Arevalo next asserts that the agency focused on a non-protected ground without considering mixed motives. However, the BIA cited caselaw acknowledging "that multiple motivations can exist, and the presence of a non-protected motivation does not render the applicant ineligible for asylum." These accurate, on-point citations "necessarily 'acknowledged the possibility of a mixed-motive case.'" Barnica-Lopez, 59 F.4th at 529 (quoting Villalta-Martinez v. Sessions, 882 F.3d 20, 24 (1st Cir. 2018)). Moreover, the BIA pointed to the record before discerning no error in the IJ's finding that the attacks in Guatemala were "due to retribution or reprisal." Because the BIA cited the mixed-motive standard and supported its conclusion with facts drawn from the record, we conclude that it analyzed for mixed motives and "made a fact-specific determination that [Gonzalez-Arevalo] had not shown that the persecution was motivated by a family relationship." Barnica-Lopez, 59 F.4th at 529-30 (quoting Villalta-Martinez, 882 F.3d at 24).

This makes Gonzalez-Arevalo's analogy to Aldana-Ramos inapt. There, we vacated the BIA's decision "because it did not allow for the possibility of mixed motives" at all. 757 F.3d at 19. Here, the BIA acknowledged that possibility because it cited the mixed-motive standard before concluding that the facts did not bear out Gonzalez-Arevalo's argument. Aldana-Ramos is not like this case.

One final point. Gonzalez-Arevalo implies that the agency had to infer that his family membership motivated his persecutors (whoever they were) because his family members and family friend were killed. But "'[t]he mere fact that [a persecutor] exclusively targeted [family] members' does not compel the logical inference that kinship motivated" a petitioner's harm.[4] Loja-Tene, 975 F.3d at 62 (alterations in original) (quoting Marín-Portillo v. Lynch, 834 F.3d 99, 102 (1st Cir. 2016)); see Barnica-Lopez, 59 F.4th at 531-32. Although the agency might have inferred kinship-based persecution from this pattern, the record also made it plausible that family membership was subordinate to reprisal in his persecutors' minds. See Ruiz, 526 F.3d at 37. For example, Gonzalez-Arevalo testified consistently that he was targeted for reprisal over the killers' incarceration, and he presented nothing to tie the 2010 attacks or gang-related deaths in Guatemala to his kinship. When "the record supports plausible

_____

[4] This is not a case where persecutors only imputed a family member's actions to an asylum seeker. See Pineda-Maldonado v. Garland, 91 F.4th 76, 85-90 (1st Cir. 2024). Gonzalez-Arevalo testified consistently that his persecutors believed that he was responsible for his father and uncle's killers' incarceration. The agency concluded from this testimony that Gonzalez-Arevalo's persecutors retaliated against him because of what they believed he did, not what another family member did. Substantial evidence therefore supports its conclusion that retribution was "at the root" of the alleged persecution. Barnica-Lopez, 59 F.4th at 531 (quoting Ruiz-Escobar, 881 F.3d at 259) (substantial evidence supported the agency's finding that retribution motivated persecution where the petitioners testified that their assailants were motivated by "revenge").

- 16 -

but conflicting inferences in an immigration case, the [agency's] choice between those inferences is, a fortiori, supported by substantial evidence." Villafranca v. Lynch, 797 F.3d 91, 97 (1st Cir. 2015) (quoting Hincapie, 494 F.3d at 219).  So it is here.

We uphold the agency's finding that Gonzalez-Arevalo's family membership was not one central reason for his persecution. Accordingly, he was not entitled to a presumption of future persecution.  "Fear of future persecution, like past persecution, must be on account of a protected ground."  Esteban-Garcia, 94 F.4th at 194.  The agency also rejected Gonzalez-Arevalo's future-persecution claim based on his failure to prove a nexus between his harm and a protected ground.  Substantial evidence supported that finding for the reasons we explained above.  See id. at 194-95.

Gonzalez-Arevalo failed to establish a nexus between his harm and a protected ground.  Accordingly, we need not consider his remaining arguments.  See id. at 191.

### C. Withholding of Removal

"[A] noncitizen who cannot meet the lower asylum standard will necessarily fail to make out a counterpart claim under the higher standard for withholding of removal." Id. at 195 (alteration in original) (quoting López-Pérez, 26 F.4th at 111). Gonzalez-Arevalo cannot meet the asylum standard, so he cannot meet the withholding of removal standard.

## III. CONCLUSION

We need go no further. Substantial evidence supports the agency's finding that Gonzalez-Arevalo did not prove persecution "on account of" a protected ground. 8 U.S.C. § 1101(a)(42)(A). We thus **deny** his petition.