# United States Court of Appeals
## For the First Circuit

No. 06-1266

SOTHY OUK,

Petitioner,

v.

ALBERTO R. GONZALES,
Attorney General of the United States,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Lynch, and Howard,
Circuit Judges.

Thomas Stylianos, Jr. on brief for Petitioner.
Margot L. Nadel, Attorney, Office of Immigration Litigation,
Peter D. Keisler, Assistant Attorney General, and Terri J. Scadron,
Assistant Director, Office of Immigration Litigation, on brief for
Respondent.

September 29, 2006

**LYNCH**, **Circuit Judge**.  Petitioner Sothy Ouk, a native and citizen of Cambodia, appeals from a final order of removal of the Board of Immigration Appeals (BIA), which denied her petition for asylum, withholding of removal, and protection under the Convention Against Torture (CAT).  An Immigration Judge (IJ) found that Ouk had not previously been persecuted on the basis of a protected ground, and that she had not met her burden of establishing a well-founded fear of future persecution.  He also found that she had failed to establish that it was more likely than not that she would be persecuted or tortured if she returned to Cambodia.  In a per curiam order, the BIA adopted and affirmed the IJ's ruling.  We affirm the BIA and deny the petition.

I.

On February 7, 2003, Ouk entered the United States as a non-immigrant visitor.  She was permitted to remain in the United States until August 6, 2003.  Ouk did not depart by that date, and thereafter her presence was unauthorized.  On February 6, 2004, Ouk filed an application requesting political asylum and withholding of removal based on her political opinion and membership in a particular social group.  She also requested protection under the CAT.  On September 20, 2004, Ouk was served with a Notice to Appear in removal proceedings before an IJ.  She conceded removability and renewed her application for asylum, withholding of removal, and CAT protection.

At her removal hearing on November 19, 2004, Ouk testified that she had suffered persecution in Cambodia on account of her political opinion and membership in the Sam Rainsy party, an opposition political party. Ouk testified that this persecution had come at the hands of the Cambodian People's Party.[1] In March 1997, Ouk and her husband attended a political protest. At that protest, the police beat members of opposition parties and threw hand grenades into the crowd. Ouk claimed that she was identified as a member of the Sam Rainsy party by her neighbor, a police officer who saw her at the demonstration. Ouk also testified that she believed that her husband was killed in July 1997 because of his opposition to the People's Party. Thereafter, Ouk "hid [her]self around the city of Phnom Penh" because she feared that the People's Party would try to kill her, too. Ouk stated that between 1997 and 2003 she attempted several times to come to the United States.

Ouk also testified that other members of her family had suffered persecution because of their political affiliations. She testified that her father, who had been a member of the National United Front for a Neutral, Peaceful, Cooperative, and Independent Cambodia (FUNCINPEC), another opposition political party, had been arrested by the People's Party, presumably because of his political

---

[1] The Cambodian People's Party is the currently governing party in Cambodia and is headed by Prime Minister Hun Sen, a former member of the Khmer Rouge.

-3-

activities. He then escaped Cambodia and emigrated to the United States, where he now lives as a legal permanent resident. In addition, Ouk reported that her older brother was killed by the Khmer Rouge, and she claimed that members of the People's Party had attempted to kill her younger brothers and sisters. Five of her siblings now live in the United States, while two of them still live in Cambodia.

Ouk also offered documentary evidence, including two expert reports diagnosing her with post-traumatic stress disorder and attesting to the reasonableness of her fear of returning to Cambodia.

In an oral decision, the IJ denied Ouk's application for asylum, withholding of removal, and CAT protection, but granted her the privilege of voluntary departure until January 18, 2005. In his opinion, the IJ stated that although he found Ouk's oral testimony generally to be credible, he was skeptical of her statements that she had been in hiding for the six years preceding her departure from Cambodia. The IJ also found that although Ouk's husband had disappeared, her husband's political opinion could not be imputed to her, and that Ouk "ha[d] experienced no difficulties while she was in Cambodia." Rather, she had applied for and received a passport in Cambodia, and had received an exit stamp upon leaving. The IJ further emphasized that Ouk's brother and sister, who also are members of the Sam Rainsy party, live safely

in Cambodia, and that in the last election, the Sam Rainsy party won twenty-four seats in the national assembly. Finally, he referred to the Cambodian constitution's provision of the right to change the government peacefully and to a State Department report indicating that "citizens generally exercise this right in practice through periodic elections on the basis of universal suffrage."

On February 1, 2006, the BIA adopted and affirmed the IJ's ruling and extended the time within which Ouk could voluntarily depart the United States until April 2, 2006. The BIA specifically commented that "[o]ther than . . . minor bruises suffered as a result of crowd movement at a demonstration, the record [did] not indicate that [Ouk] was ever seriously harmed." The BIA also noted that the reasonableness of Ouk's fear of future persecution was undermined by her family's continued presence -- without incident -- in Cambodia.[2]

II.

Ouk argues in her petition for review that the IJ erred in (1) failing to find that she had established a well-founded fear of future persecution in Cambodia, (2) failing to recognize her emotional harm in evaluating her asylum claim, and (3) failing to

_____

[2] The BIA did not consider evidence first submitted on appeal. It found that Ouk had failed to explain why certain evidence was not presented at her hearing before the IJ, and it noted that the evidence that became available after her hearing could not independently establish that Ouk had a well-founded fear of persecution.

consider her mental illness in ruling on her withholding of removal claim. Ouk also argues that the time period within which she is required to post her voluntary departure bond should be tolled from the date that she filed a petition for review in this court.

When the BIA adopts the IJ's opinion and discusses some of the bases for the IJ's decision, we have authority to review both the IJ's and the BIA's opinions. Romilus v. Ashcroft, 385 F.3d 1, 5 (1st Cir. 2004) (citing Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004) ("[W]hen the BIA both adopts the findings of the IJ and discusses some of the bases for the IJ's decision, we have authority to review the decisions of both the IJ and the BIA.")).

To be eligible for asylum, an alien must demonstrate that she is a "refugee." 8 U.S.C. § 1158(b)(1)(A). To do so, the alien must show that she reasonably fears persecution "on account of race, religion, nationality, membership in a particular social group, or political opinion." Id. § 1101(a)(42)(A); see also Mukamusoni v. Ashcroft, 390 F.3d 110, 119 (1st Cir. 2004). The alien bears the burden of proof for establishing her eligibility for asylum. 8 U.S.C. § 1158(b)(1)(B)(i). Whether or not an alien has met her burden is a factual determination that we review under the deferential substantial evidence standard. See Estrada-Canales v. Gonzales, 437 F.3d 208, 215 (1st Cir. 2006). Thus, we will uphold the agency's determination "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8

-6-

U.S.C. § 1252(b)(4)(B); see also Rodriquez-Ramirez v. Ashcroft, 398 F.3d 120, 123 (1st Cir. 2005).

Here, substantial evidence supports the IJ's determination that Ouk does not have a well-founded fear of persecution in Cambodia. Apart from minor injuries from crowd movement at the 1997 demonstration, Ouk was never physically harmed in Cambodia because of her political affiliation. The IJ's decision also is supported by Ouk's testimony that she emerged from hiding on several occasions, including to apply for a passport and visa to enter the United States. In 2000, she received a passport from the Cambodian government, and in 2003, she received a visa to come to the United States. She was not detained at the airport upon her departure from Cambodia.

Moreover, according to the 2003 State Department Country Report on Cambodia, the Sam Rainsy party holds approximately 20% of the seats in the Cambodian national assembly, as does the FUNCINPEC party. Two of Ouk's siblings -- both of whom also are members of the Sam Rainsy party -- continue to live in Cambodia without incident. See Aguilar-Solis v. INS, 168 F.3d 565, 573 (1st Cir. 1999) ("[T]he fact that close relatives continue to live peacefully in the alien's homeland undercuts the alien's claim that persecution awaits his return."); see also Sou v. Gonzales, 450 F.3d 1, 8 (1st Cir. 2006). Ouk's brother voluntarily returned to Cambodia after visiting the United States. Ouk's son also lives in

-7-

Cambodia and remains unharmed. Indeed, the 2003 Country Report states that "[t]here were no reports of politically motivated disappearances" and "no reports of political prisoners" during the year.

The IJ did not inappropriately discount Ouk's emotional harm. "[U]nder the right set of circumstances, a finding of past persecution might rest on a showing of psychological harm." Makhoul v. Ashcroft, 387 F.3d 75, 80 (1st Cir. 2004). Here, assuming Ouk suffers from post-traumatic stress disorder, the IJ was warranted in finding that she had not shown that it was related to any persecution directed at her, and therefore that she had not established past persecution based on her political opinion. To the extent that Ouk relies on her post-traumatic stress disorder as evidence of her fear of future persecution, the IJ was warranted in finding that she had failed to meet her burden, even taking her fear as genuine. Genuine fear is not sufficient to establish eligibility for asylum. For the reasons described above, we cannot say that any reasonable adjudicator would be compelled to find that Ouk has a well-founded fear of persecution in Cambodia.

As to Ouk's withholding of removal claim, this court lacks jurisdiction to consider whether Ouk is more likely than not to be persecuted based on her mental illness. Ouk failed to raise -- in her written applications or oral testimony before the IJ, or in her briefs to the BIA -- an argument that she would be

persecuted because she suffers from post-traumatic stress disorder. As a result, she has failed to exhaust her administrative remedies, and we may not consider the argument. See id. We add that even if Ouk's claim were properly before us, there is no evidence whatsoever in the record that she "is more likely than not to face persecution on account of . . . membership in a particular social group." See Salazar v. Ashcroft, 359 F.3d 45, 52 (1st Cir. 2004) (emphasis omitted).

Finally, as to the grant of voluntary departure, the government has not opposed Ouk's argument for tolling the period during which she must post her departure bond. Accordingly, Ouk has one business day from the issuance of this opinion to post her $500 voluntary departure bond.

The petition for review is otherwise denied.