**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 06-1496

SEDA BUNTHAN,

Petitioner,

v.

ALBERTO R. GONZALES, ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Circuit Judge,
Selya and Cyr, Senior Circuit Judges.

Vanthan R. Un on brief for petitioner.
Michael J. Sullivan, United States Attorney, and Gina Walcott-Torres, Assistant United States Attorney, on brief for respondent.

July 13, 2007

**Per Curiam**.  The petitioner, Seda Bunthan, is a middle-aged native and citizen of Cambodia.  She entered the United States on April 1, 2001, as a visitor, and overstayed the time allotted in her visa.  Within one year of her arrival, she sought asylum.  When her case was referred for the institution of removal proceedings, she conceded removability and cross-applied for asylum, withholding of removal, or protection under the Convention Against Torture (CAT) on the ground that she had suffered from, and continued to fear, persecution and torture related to her involvement in a Cambodian political group.

An Immigration Judge (IJ) ruled that the petitioner had failed to present sufficient evidence to support any ground for relief.  Consequently, he denied her application and ordered removal.  The Board of Immigration Appeals (BIA) adopted the IJ's decision and affirmed his ukase.  The petitioner now seeks judicial review.  Concluding, as we do, that there is substantial evidence in the record to support the BIA's decision, we deny the petition.

We set out the petitioner's version of the raw facts. She worked for many years as a schoolteacher in Takhmao, Cambodia. On June 4, 1998, she and several other teachers joined the Sam Rainsy Party (SRP).  At the time, the SRP stood in opposition to the reigning Cambodia People's Party (CPP) and its leader, Prime Minister Hun Sen.  The school committee took umbrage at this action and chastised the teachers.

During the 1998 elections, the petitioner claims to have worked with the SRP's national campaign committee. Between August 23 and September 8 of that year, she participated in a long-running demonstration against Hun Sen and his regime — a demonstration that called for his resignation.[1] She claims that, as a result of these activities, shots were fired at her.[2] Moreover, CPP adherents tried to assault her. After a grenade explosion inflicted minor injuries, she left the scene of the demonstration.

The petitioner also recounted an incident that happened more than two years later. She claimed that, on January 20, 2001, she and her husband came under fire as they were riding on a motorcycle in the Takhmao market area. Shortly after this episode, the petitioner repaired to the United States.

Upon the conclusion of the hearing, the IJ rendered a bench decision. He determined that the petitioner had failed to show either that she had suffered past persecution or that she harbored a well-founded fear of future persecution. The IJ also found that she had not shown a likelihood of torture were she to be returned to her homeland. In explaining these findings, the IJ

_____

[1]There is also some suggestion in the hearing transcript that the petitioner, along with other faculty members at her school, participated in an April 1998 demonstration. The details of that rally are hazy and, in all events, the petitioner does not mention it in her appellate briefing.

[2]Although the petitioner testified before the IJ about the firing of shots, she made no mention of that in her asylum application.

construed the 1998 incident as an unfortunate case of police overreaction, not a direct attack on the petitioner based on her political views. He noted that the incident had occurred over two-and-one-half years prior to the petitioner's exodus from Cambodia and that, in the interim, the petitioner had "continued to maintain her profession in that country."

The IJ also squarely addressed the 2001 incident. He determined that it was much more likely to have been the product of random criminal activity than to have been retribution for the petitioner's political activities. In this regard, the IJ observed that the petitioner, who initially had written in her asylum application that Hun Sen's "hit men" had fired the shots, had retracted that claim at the hearing and had conceded that she could not identify the perpetrators.

The IJ concluded that, taken together, the 1998 and 2001 incidents did not fairly support the petitioner's claim of past persecution. The fact that she had continued to maintain her position as a schoolteacher until the date of her departure from Cambodia further undermined any inference of past persecution. Accordingly, the IJ rejected that theorem.

With respect to fear of future persecution, the IJ found insufficient evidence to satisfy the objective component of the applicable legal standard. In so holding, he emphasized that the petitioner's husband and children continued to live unharmed in

Cambodia. Based on these findings and conclusions, the IJ denied the asylum and withholding of removal claims.

That left the CAT claim, which the IJ gave short shrift. Stressing the paucity of evidence and the same familial considerations previously mentioned, he concluded that the petitioner would not likely face torture were she repatriated.

In sum, the IJ denied the petitioner's cross-application for any form of relief (save voluntary departure) and ordered removal if no voluntary departure occurred. The BIA subsequently adopted and affirmed the IJ's decision. This timely petition for judicial review followed.

Where, as here, the BIA has written separately while adopting and affirming an IJ's decision, we look to both the BIA's opinion and the IJ's opinion for purposes of judicial review. See Ouk v. Gonzales, 464 F.3d 108, 110 (1st Cir. 2006). In conducting this review, we assess the IJ's factual findings pursuant to the substantial evidence standard. See id. That standard is quite deferential and requires us to accept findings of fact as long as they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992); see 8 U.S.C. § 1252(b)(4)(B). In the absence of an error of law — and we discern none here — we may reverse the BIA's determination only if the evidence compels

some other conclusion. See Sou v. Gonzales, 450 F.3d 1, 6 (1st Cir. 2006); Olujoke v. Gonzales, 411 F.3d 16, 21 (1st Cir. 2005).

In order to qualify for asylum, an alien first must establish her status as a refugee, that is, a person who is unable or unwilling to return to her homeland "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); see INS v. Cardoza-Fonseca, 480 U.S. 421, 428 (1987). Proof of past persecution gives rise to a rebuttable presumption that a well-founded fear of future persecution exists. See 8 C.F.R. § 208.13(b)(1); Orelien v. Gonzales, 467 F.3d 67, 71 (1st Cir. 2006).

Persecution is a protean term, not defined by statute. To rise to the level of persecution, the sum of the alien's experiences must add up to more than mere harassment, garden-variety mistreatment, or ordinary suffering. See Attia v. Gonzales, 477 F.3d 21, 23 (1st Cir. 2007); Bocova v. Gonzales, 412 F.3d 257, 263 (1st Cir. 2005). In drawing this distinction, it often is useful to determine whether particular mistreatment is systematic as opposed to a collection of isolated incidents. Bocova, 412 F.3d at 263.

Here, the petitioner claims to have suffered past persecution based on her political activities and opinion.[3] The IJ and the BIA found, however, that the petitioner did not suffer past persecution on account of her political views. That finding is supported by substantial evidence.[4]

At the hearing, the petitioner claimed that she had been warned by school committee members about her fledgling political allegiance and that she had been subjected to police brutality at a demonstration in the fall of 1998. She conceded, however, that she had never been arrested, imprisoned, or seriously harmed. Moreover, she was an unlikely target; while she claimed that she was active in the SRP, she did not organize others or play a leadership role in the demonstration (or any other political event, for that matter). This back-bench posture tends to undercut her claim that she was specially targeted on account of political opinion. See Morales v. INS, 208 F.3d 323, 330 (1st Cir. 2000).

---

[3]Although the petitioner asserts in her brief that she also was persecuted on account of her membership in a particular social group, she makes no effort to define that social group. We deem that claim abandoned. See Pan v. Gonzales, ___ F.3d ___, ___ (1st Cir. 2007) [No. 06-2166, slip op. at 16] ("We long have held that legal theories advanced in skeletal form, unaccompanied by some developed argumentation, are deemed abandoned."); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (same).

[4]In her brief, the petitioner suggests, without citation to the record, that this finding rests on an adverse credibility determination. It does not.

The episode that occurred nearly three years later, in 2001, is even less probative of past persecution. The petitioner wholly failed to show that the incident had anything to do with her politics. By the same token, she failed to show that the government played any part in it. Although she asserted in her asylum application that two of Hun Sen's hit men had fired the wayward shots, she retracted that assertion at the hearing and admitted that she did not know who had pulled the trigger.

As the IJ remarked in his well-reasoned decision, these two incidents add up to very little. Taken together, they fall far short of compelling a finding of past persecution. See, e.g., Topalli v. Gonzales, 417 F.3d 128, 132 (1st Cir. 2005) (upholding a finding that seven arrests over a two-year period, some accompanied by beatings and detentions, did not constitute persecution); Bocova, 412 F.3d at 263 (upholding a finding of no persecution, notwithstanding testimony of two police beatings occurring more than twenty-five months apart).

The petitioner's contention that she had a well-founded fear of future persecution fares no better. Without a showing of past persecution, the petitioner must make the requisite showing unaided by any presumption. She failed to do so.

A well-founded fear of persecution must be both subjectively genuine and objectively reasonable. See Toloza-Jiménez v. Gonzales, 457 F.3d 155, 161 (1st Cir. 2006); Palma-

Mazariegos v. Gonzales, 428 F.3d 30, 35 (1st Cir. 2005). This record reveals no objectively reasonable basis for such a fear.[5] The two isolated incidents already discussed hardly suffice to lay a foundation for the contention, and other uncontradicted evidence in the record indicates that the political climate in Cambodia has improved since the date of the petitioner's departure. The State Department's 2004 report on country conditions adequately evinces that, in 2002, the government for the first time held nationwide local-level elections. The SRP participated and won over 1,300 councilmanic seats. Because the SRP is now a legitimate player in Cambodian politics, there seems little reason to fear targeted persecution on account of allegiance to that party.

If more were needed — and we doubt that it is — the fact that the petitioner's family continues to reside in Cambodia without apparent incident strongly suggests that persecution does not await upon her return. See Zheng v. Gonzales, 416 F.3d 97, 101 (1st Cir. 2005); Aguilar-Solis v. INS, 168 F.3d 565, 573 (1st Cir. 1999).

The petitioner's alternative claim for withholding of removal need not detain us. A claim for withholding of removal

_____

[5]To be sure, the record suggests that Cambodia is not a tranquil place. Generally speaking, however, evidence of episodic violence or human rights violations affecting all citizens is inadequate, without more, to establish a likelihood of future persecution. Ravindran v. INS, 976 F.2d 754, 759 (1st Cir. 1992).

-9-

"places a more stringent burden of proof on an alien than does a counterpart claim for asylum." Olujoke, 411 F.3d at 22 (quoting Rodriquez-Ramirez v. Ashcroft, 398 F.3d 120, 123 (1st Cir. 2005)). It follows, a fortiori, that the rejection of the petitioner's claim for asylum necessitates a similar disposition of her claim for withholding of removal.

That brings us to the petitioner's claim for relief under the CAT. To prevail on such a claim, the petitioner has the burden of demonstrating that it is more likely than not that she will be tortured if returned to her homeland. See 8 C.F.R. § 208.16(c)(2); Elien v. Ashcroft, 364 F.3d 392, 398 (1st Cir. 2004). Torture is defined as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . by or at the . . . acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1).

In this instance, the petitioner has failed to point to any evidence that would allow us to set aside the denial of her CAT claim. The documentary evidence that she introduced (internet news articles and the like) does no more than make generalized references to the commission of atrocities against the local populace from time to time by Hun Sen's henchmen. Random atrocities are not to be countenanced, but the record is bereft of any evidence — let alone substantial evidence — suggesting that those atrocities are targeted at persons like the petitioner. To

say it is more likely than not that the petitioner will be subjected to torture if she returns to Cambodia is pure speculation. Because the evidence does not "point[] unerringly in the opposite direction," Laurent v. Ashcroft, 359 F.3d 59, 64 (1st Cir. 2004), we must uphold the determination that the petitioner failed to prove her claim for relief under the CAT.

There is one loose end. The petitioner introduced into evidence at the hearing several articles that described acts of general violence committed against SRP candidates. She now asseverates that her due process rights were violated because the IJ failed to discuss this evidence.

We review the question of whether a party's due process rights have been infringed de novo. Morales, 208 F.3d at 327. For due process protections to attach, there must be a cognizable property or liberty interest at stake. Naeem v. Gonzales, 469 F.3d 33, 38-39 (1st Cir. 2006). The petitioner has no property interest in asylum. See Jupiter v. Ashcroft, 396 F.3d 487, 492 (1st Cir. 2005). She does have a liberty interest in a fair hearing — but here, the petitioner received all the process that was due. An agency need not "dissect in minute detail" every argument or piece of evidence that the petitioner puts forward. Raza v. Gonzales, 484 F.3d 125, 128 (1st Cir. 2007). It is sufficient that the agency considers the evidence adduced and constructs a plausible

decision that allows a reviewing court to follow its reasoning. See id.  That is what occurred here.[6]

We need go no further.  For the reasons elucidated above, we deny the petition for judicial review.

**So Ordered.**

---

[6]We add a coda: to the extent that attacks on candidates of the SRP have occurred, that is of little relevance here.  The petitioner has never been a candidate.