# United States Court of Appeals
## For the First Circuit

No. 23-1776

WILLIAM REGINALDO RODRIGUES;
DEBORA SOARES GOMES RODRIGUES; W.T.S.R.,

Petitioners,

v.

MERRICK B. GARLAND, United States Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
THE BOARD OF IMMIGRATION APPEALS

Before

Gelpí, Thompson, and Rikelman
Circuit Judges.

Robert F. Weber, with whom Randy Olen was on brief, for petitioners.

Ilana J. Snyder, Senior Litigation Counsel, Office of Immigration Litigation, with whom Sheri R. Glaser, Senior Litigation Counsel, and Brian Boynton, Principal Deputy Assistant Attorney General, U.S. Department of Justice, were on brief, for respondent.

December 27, 2024

**GELPÍ**, **Circuit Judge**.  This immigration case involves a Brazilian family of three seeking relief from removal.  William Reginaldo Rodrigues, along with his wife, Debra Soares Rodrigues, and their son, W.T.S.R., (collectively, the "Petitioners") seek judicial review of a final order issued by the Board of Immigration Appeals ("BIA").  That order affirmed the Immigration Judge's ("IJ" and, together with the BIA, "the Agency") denial of Petitioners' request for asylum and withholding of removal.

We find no error.  The IJ applied the correct legal standard in assessing Petitioners' claim for asylum and withholding of removal.  And we find no reasonable adjudicator would be compelled to reach a different outcome.  We accordingly deny the petition for review.

## I. BACKGROUND

We "draw our background 'from the administrative record, including [Mr. Rodrigues's] testimony before the IJ, which [he] found credible.'"  Gonzalez-Arevalo v. Garland, 112 F.4th 1, 6 (1st Cir. 2024) (quoting Chun Mendez v. Garland, 96 F.4th 58, 61 (1st Cir. 2024)).

## A. Underlying Facts

Petitioners, who are natives and citizens of Brazil, entered the United States without inspection via the Mexican border.  Shortly thereafter, the U.S. Department of Homeland Security served Petitioners with Notices to Appear, charging them

with being in the United States without being admitted or paroled under the Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i). As a result, Petitioners appeared before the IJ.

During the proceedings, Petitioners acknowledged their removability. Mr. Rodrigues, however, applied for asylum under INA § 208 as a primary asylum applicant, including his wife and child as derivative applicants. Mr. Rodrigues also sought withholding of removal under INA § 241(b)(3) and withholding of removal under Article 3 of the United Nations Convention Against Torture ("CAT"). In support of his application, Mr. Rodrigues offered his testimony, which included an explanation of why he left Brazil.

Mr. Rodrigues stated that he and his family fled Brazil for fear of persecution stemming from two sources: (1) drug traffickers seeking to collect a debt from his brother-in-law, Daniel, who is involved in drug trafficking in Brazil, and (2) his employer, the Gardingo family.

**Fear of Drug Traffickers**. First, Mr. Rodrigues testified that he fears returning to Brazil because Daniel has been arrested for drug trafficking. Daniel owes large sums of money to his drug suppliers in Brazil, who have threatened him. Although the suppliers' threats were specifically directed at Daniel, Mr. Rodrigues testified that Petitioners are also in danger because it is common for drug dealers to target the families of

those who owe them money. Mr. Rodrigues also testified that the police officers "involved in the trafficking" might also seek to harm his family. This is why Petitioners believe their familial ties to Daniel will expose them to persecution as members in a particular social group, to wit, the Rodrigues family.

**Fear of the Gardingo Family**. Petitioners also seek asylum based on their fear of persecution for their political opinion. This is where the Gardingo family enters the scene.

Mr. Rodrigues worked for the Gardingos, a powerful and influential family in the town of Matipo, Brazil, Mr. Rodrigues's hometown. The Gardingo family owns a food distribution and supermarket chain in Matipo. They are not only involved in commercial activities, but also in local politics. According to Mr. Rodrigues, the Gardingo family controls Matipo, with different members of the family in succession serving as its mayor. The Gardingo family strong arms their employees into voting for their candidate of choice. If an employee refuses to do so, then the family fires them and makes it impossible for the employee to work in Matipo. Mr. Rodrigues has also suggested that the Gardingo family will protect its political interests with violence. In particular, Mr. Rodrigues testified that the Gardingo family once ordered the killing of an opposition party candidate who had been elected to office.

- 4 -

Relevant here, Mr. Rodrigues does not support the Gardingo family's political party, and so while working for them, he felt he could not express his political beliefs freely. On the other hand, Mr. Rodrigues admitted that the Gardingo family never harmed nor personally threatened him nor his family. Indeed, there is no evidence that the Gardingo family was even aware of Mr. Rodrigues's political thinking. Against this backdrop, we now turn to the Agency's decision, focusing only on those portions thereof relevant to the instant petition for review.

## B. Procedural History

The IJ found Mr. Rodrigues's testimony credible. In assessing Petitioners' fear of persecution, the IJ determined the evidence was insufficient for a finding of past persecution or a well-founded fear of future persecution. Because Petitioners were never harmed, the IJ concluded that no past persecution took place. As to future persecution, the IJ next found that Petitioners had failed to demonstrate that their subjective fear was objectively reasonable. The IJ explained that Petitioners did not evidence how they would be singled out individually for persecution by either the drug traffickers or the Gardingo family, as neither group ever harmed nor threatened the Petitioners in the past. As

a result of his findings, he denied the Petitioners' applications for asylum.[1]

Given that Petitioners did not establish eligibility for asylum, Mr. Rodrigues did not meet the higher standard required to prevail on his individual claim for withholding of removal under INA § 241(b)(3). Nor, according to the IJ, did he produce sufficient evidence to meet his burden of proof for withholding of removal under the CAT.[2]

Petitioners appealed to the BIA. The BIA, in turn, adopted and affirmed the IJ's decision, explaining briefly that Petitioners had not identified any clear error of fact, and made no argument that would justify disturbing the IJ's decision. The petition for judicial review to this court followed. We have jurisdiction to entertain the same pursuant to 8 U.S.C. § 1252(a)(1).

---

[1] The IJ also analyzed two other independent grounds for denying asylum, which Petitioners also challenge in their brief, namely the reasonableness of relocation in Brazil and the Brazilian government's willingness and ability to protect Petitioners from persecution. We recount in detail only the IJ's decision as to the objective reasonableness of Petitioners' fear of persecution, because it is the focus of our instant opinion.

[2] Petitioners do not challenge the IJ's decision on their claim under the CAT. Thus, we say no more about this claim.

## II. DISCUSSION

### A. Standard of Review

"When the BIA summarily affirms the IJ's opinion, as here, the court reviews the decision of the IJ." Quevedo v. Ashcroft, 336 F.3d 39, 43 (1st Cir. 2003) (first citing Herbert v. Ashcroft, 325 F.3d 68, 71 (1st Cir. 2003); and then citing Albathani v. INS, 318 F.3d 365, 373 (1st Cir. 2003)). We review de novo the IJ's legal conclusions, but defer to the IJ's factual determinations if the same are supported by substantial evidence. Ahmed v. Holder, 611 F.3d 90, 94 (1st Cir. 2010).

The substantial evidence standard "requires us to accept the [IJ's] factual findings . . . unless the record is such as to compel a reasonable factfinder to reach a contrary conclusion." Ramos-Gutierrez v. Garland, 110 F.4th 1, 6 (1st Cir. 2024) (alterations in original) (quoting Dorce v. Garland, 50 F.4th 207, 212 (1st Cir. 2022)). "This is not a petitioner-friendly standard of review." Dong v. Holder, 696 F.3d 121, 125 (1st Cir. 2012) (quoting Ruiz v. Mukasey, 526 F.3d 31, 35 (1st Cir. 2008)). Indeed, "we may not reverse the [IJ's decision] simply because we disagree with [his] evaluation of the evidence; if the [IJ]'s conclusion is substantially reasonable, we must affirm it." Ravindran v. INS, 976 F.2d 754, 758 (1st Cir. 1992).

## B. Asylum Claim

To be eligible for asylum, an applicant must show that he or she is a refugee under the INA, 8 U.S.C. § 1158(b)(1). The INA defines refugee as a person who is unable or unwilling to return to a home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." Id. § 1101(a)(42)(A). In this context, persecution requires evidence of a "certain level of serious harm (whether past or anticipated), a sufficient nexus between that harm and government action or inaction, and a causal connection to one of th[ose] statutorily protected grounds." Gonzalez-Arevalo, 112 F.4th at 8 (quoting Barnica-Lopez v. Garland, 59 F.4th 520, 527 (1st Cir. 2023) (alteration in original)).

A showing of past persecution on account of a protected ground establishes a rebuttable presumption that the applicant has a well-founded fear of future persecution. Palma-Mazariegos v. Gonzales, 428 F.3d 30, 34 (1st Cir. 2005). But if the applicant fails to prove past persecution, then he or she must evidence a well-founded fear of future persecution. Esteban-Garcia v. Garland, 94 F.4th 186, 191 (1st Cir. 2024).

"An applicant has a 'well-founded fear of persecution' in [his or] her country [upon] establish[ing] that [his or] her fear is both (1) subjectively genuine and (2) objectively

- 8 -

reasonable, meaning that a reasonable person in the applicant's circumstances would fear persecution." Sugiarto v. Holder, 586 F.3d 90, 94 (1st Cir. 2009) (quoting Castillo-Diaz v. Holder, 562 F.3d 23, 26 (1st Cir. 2009)). The objective prong is satisfied only where there is "'credible, direct, and specific' evidence supporting a fear of individualized persecution in the future" or evidence to support a "pattern or practice . . . of persecution of a group of persons similarly situated to the applicant." Decky v. Holder, 587 F.3d 104, 112 (1st Cir. 2009) (first quoting Guzmán v. INS, 327 F.3d 11, 16 (1st Cir. 2003); and then quoting 8 C.F.R. § 1208.13(b)(2)(iii)(A)). As Petitioners argue, a well-founded fear of future persecution requires only a reasonable possibility that asylum applicants may be subject to persecution upon returning to their home country, which can be as low as a 10% chance. INS v. Cardoza-Fonseca, 480 U.S. 421, 440 (1987).[3]

---

[3] During oral argument, Petitioners suggested that the IJ "elevate[d] the percentage chance necessary for reasonable possibility to exist." We see no indication that the IJ misunderstood the reasonable possibility standard. The IJ's decision expressly applied the "reasonable possibility" standard, and cited to this court's binding case law requiring objective evidence of the applicant's fear of persecution. In any event, this claim of error was never articulated in Petitioners' brief and is thus waived. United States v. Pizarro-Berríos, 448 F.3d 1, 5 (1st Cir. 2006) ("We have consistently held that, except in extraordinary circumstances, arguments not raised in a party's initial brief and instead raised for the first time at oral argument are considered waived.").

Here, Petitioners do not assert that they demonstrated past persecution. Thus Petitioners bear the burden of proving a well-founded fear of future persecution. For its part, the Government does not dispute that Petitioners established their subjective fear of persecution. As such, the crux of this appeal is the objective component of the two-part test; that is, whether Petitioners' have a well-founded fear of future persecution that is objectively reasonable.

Because Petitioners seek asylum based on two different protected classes (particular social group and political opinion) and adduce different evidence in support of each, we address Petitioners' arguments regarding their well-founded fear of persecution separately for each protected class. As we explain below, substantial evidence supports the IJ's conclusion that Petitioners failed to show an objectively reasonable fear of persecution.

### 1. Membership in a Particular Social Group

Petitioners seek asylum based on their membership in a particular social group: that is, the Rodrigues family. As the government does not challenge whether Petitioners' family membership can be a protected class, we assume for the purposes of this opinion that the Rodrigues family qualifies as a viable particular social group. As we described above, Petitioners' fear stems from Mr. Rodrigues's brother-in-law, Daniel, who was

involved in drug trafficking and owes a debt to his suppliers. As his relatives, Petitioners fear the drug suppliers may in turn target them for the money Daniel owes -- an alleged common practice in Brazil.

Petitioners contend that their fear of future persecution is objectively reasonable and supported by sufficient evidence. First, they offer country conditions reports depicting Brazil as a violent and dangerous country, dealing with violence associated with drug trafficking and organized crime, as well as police engaging in unlawful and arbitrary killings. Second, they offer Mr. Rodrigues's testimony that drug traffickers threatened Daniel that "if he didn't pay the debt that he owed," the drug traffickers were going to get their money back "no matter what."[4]

---

[4] In describing the history of this case, Petitioners' brief also refers to an encounter between Mr. Rodrigues's son, W.T.S.R., and police. Mr. Rodrigues testified that his son's physical resemblance to Daniel could lead either the drug traffickers themselves, or corrupt police officers working with the drug traffickers, to mistake W.T.S.R. for Daniel. The IJ explained that "this fear is unfounded" because on the one occasion in which police stopped W.T.S.R. after mistaking him for Daniel, the police let W.T.S.R. go without incident after confirming his identity. Petitioners do not advance any argument, in their brief or at oral argument, as to why the IJ's analysis of Mr. Rodrigues's testimony was erroneous. As such, we deem this issue waived. See Calandro v. Sedgwick Claims Mgmt. Servs., Inc., 919 F.3d 26, 38 n.8 (1st Cir. 2019) (deeming argument waived where appellant "denigrate[d]" lower court's finding, but made "no developed argument that the court below committed clear error in this respect").

Generalized country conditions reports that do not shed light on the asylum applicant's particular situation are ordinarily not enough to establish fear of future persecution. "[E]vidence of widespread violence and human rights violations affecting all citizens is insufficient to establish persecution." Ravindran, 976 F.2d at 759; see also Amouri v. Holder, 572 F.3d 29, 35 (1st Cir. 2009) (explaining that although "country conditions reports are deemed generally authoritative in immigration proceedings, the contents of such reports do not necessarily override petitioner-specific facts -- nor do they always supplant the need for particularized evidence in particular cases." (citing Zarouite v. Gonzales, 424 F.3d 60, 63-64 (1st Cir. 2005)). Much of Petitioners' country conditions evidence relates to violence by criminal organizations, including drug traffickers, and police officers. However, the country conditions reports do not demonstrate a pattern wherein drug dealers retaliate against, or single out the family members of those indebted to them, as opposed to violence related to gang recruitment or robbery. Nor do the reports of police killings of civilians suggest that such killings are driven by a collaboration between police and drug traffickers to help collect on the drug traffickers' debts. Given the lack of a direct connection with the Petitioners' asserted fear, the country conditions evidence would not compel a factfinder to conclude that a reasonable

possibility of persecution exists. See Dong, 696 F.3d at 126-27 (concluding that country conditions evidence showing "generalized trends" of religious persecution that were not "specific to [petitioner's] own circumstances" were "too speculative to compel a finding of persecution" (quoting Seng v. Holder, 584 F.3d 13, 19-20 (1st Cir. 2009))).

Turning to Mr. Rodrigues's testimony about the drug traffickers' threats, Mr. Rodrigues himself admitted that Petitioners have had no interactions with, let alone been harmed or threatened by, the Brazilian drug dealers who threatened Daniel. Mr. Rodrigues acknowledged that drug traffickers never harmed Petitioners in the past, and that no specific threats were made against them if they return to Brazil. Specifically, Mr. Rodrigues testified that if Daniel "didn't pay the debt that he owed" the drug trafficker would collect on their debt "no matter what." This testimony does not, on its face, establish that the drug traffickers knew of or intended to target Daniel's sister, brother-in-law, or nephew. We have denied petitions for review in similar asylum cases involving threats against family members rather than directly against petitioners. See Orelien v. Gonzales, 467 F.3d 67, 69 (1st Cir. 2006) (concluding the petitioner could not establish either past persecution nor sufficient fear of future persecution based on threats and violence against his cousin); Lumanauw v. Mukasey, 258 F. App'x 351, 351 (1st Cir. 2007) (per

- 13 -

curiam) (holding that threats against petitioner's sister, and not petitioner herself, did not support a fear of persecution).

Petitioners have also failed to "validate the 'well-foundedness' of [their] fear" by "set[ting] forth specific, concrete facts." Alvarez-Flores v. INS, 909 F.2d 1, 5 (1st Cir. 1990) (quoting M.A. v. INS, 899 F.2d 304, 311 (4th Cir. 1990) (en banc)). While Mr. Rodrigues testified as to his potential persecutors' motives, he could not provide other concrete details, such as the drug traffickers' identities or how much money they were owed. Petitioners may wish that the IJ had inferred, based on Mr. Rodrigues's testimony and the country conditions reports, that the drug traffickers did intend to harm Daniel's family members and thus there was a reasonable possibility of future persecution. Where, as here, the IJ drew a different, but still plausible, inference that there was no threat against the Petitioners, that decision is supported by substantial evidence. See Hincapie v. Gonzales, 494 F.3d 213, 219 (1st Cir. 2007) ("Where the record supports plausible but conflicting inferences in an immigration case, the IJ's choice between those inferences is, a fortiori, supported by substantial evidence."); see also Aguilar-Solis v. INS, 168 F.3d 565, 573 (1st Cir. 1999) (finding Petitioner's testimony failed objective prong because it lacked information regarding "nature of any danger, the identity of any

- 14 -

potential malefactors, or the reasons why people might wish to harm the petitioner").

Accordingly, the IJ's finding that Petitioners failed to show a well-founded fear of persecution based on their membership in a particular social group is supported by substantial evidence.

## 2. Political Opinion

Finally, Petitioners argue that they have established a reasonable possibility of future persecution based on their political opinion. They stress that the Gardingo family -- who is politically and economically powerful -- prohibits its employees from freely expressing their political beliefs. Because Mr. Rodrigues worked for the Gardingo family, he could not express his political opinions freely. As further evidence of the extent of the Gardingos' influence, Mr. Rodrigues testified that the Gardingos ordered the assassination of a rival political candidate who was elected as mayor. In sum, Petitioners fear they will face persecution if they return to Brazil because they do not politically support the Gardingo family.

It is not enough, however, that Mr. Rodrigues holds certain political beliefs in opposition to the Gardingos. Mendez-Barrera v. Holder, 602 F.3d 21, 27 (1st Cir. 2010) ("Holding particular religious or political beliefs, without more, is not sufficient to show persecution on account of those beliefs."). To prevail on a political asylum claim, Petitioners must provide

"evidence that the would-be persecutors knew of the beliefs and targeted [Mr. Rodrigues] for that reason." Id. at 27; see Zhakira v. Barr, 977 F.3d 60, 67 (1st Cir. 2020) (concluding that BIA correctly rejected political asylum claim where petitioner had "taken 'no actual political action'" and "identifie[d] no evidence indicating that [persecutors] would be aware of his political views"). Here, there is no evidence that the Gardingos are aware, or will become aware, of Mr. Rodrigues's political opinion. Nor did Petitioners provide any evidence that the Gardingo family had harmed them in the past, or had threatened to harm them if they return to Brazil. The absence of such evidence provides substantial support for the IJ's denial of Petitioners' political asylum claim.[5] See Makhoul v. Ashcroft, 387 F.3d 75, 81-82 (1st Cir. 2004) (concluding that petitioner lacked a well-founded fear of persecution where he had never himself been arrested, detained or harmed by alleged persecutors and had only engaged in relatively anonymous political activities); Ravindran, 976 F.2d at 759 (upholding BIA's determination that petitioner was not singled out for political persecution where petitioner had "never encountered trouble" distributing political material, local authorities did

---

[5] Given the absence of evidence that the Gardingos would target Mr. Rodrigues over his political opinion, we need not resolve the question of whether the potential economic reprisal amounted to persecution. See Caz v. Garland, 84 F.4th 22, 30 (1st Cir. 2023).

- 16 -

not know petitioner was involved with opposition party, and petitioner's sole arrest may have been due to a curfew violation).

Nor does Mr. Rodrigues's testimony about the assassination of the elected opposition candidate change the calculus. For one, the IJ found that Mr. Rodrigues's testimony did not establish the Gardingos' involvement in the assassination of the political opponent, citing to a lack of external corroborating evidence. The IJ found Mr. Rodrigues's testimony credible. But that does not mean that the IJ must accept as true everything Mr. Rodrigues testified at the hearing. This is so because "even if the [IJ] treats an alien's evidence as credible, the agency need not find his evidence persuasive or sufficient to meet the burden of proof." Garland v. Dai, 593 U.S. 357, 371 (2021).

Even if we overlooked the deference due to the IJ's factual determination and credited the truth of Mr. Rodrigues's account, the incident does little to support the well-foundedness of Petitioners' fear. To begin with, the assassination occurred more than thirty years ago. The IJ was not compelled to find that Petitioners would face the reasonable possibility of similar violence based on a three-decade-old incident. See Jorgji v. Mukasey, 514 F.3d 53, 58 (1st Cir. 2008) (upholding IJ's determination that evidence of persecution of family members more than thirty-five years ago failed to show sufficient pattern of

- 17 -

persecution relevant to petitioner); Mediouni v. INS, 314 F.3d 24, 28 (1st Cir. 2002) (concluding that although petitioner provided evidence from which BIA could have inferred that petitioner's father's service as police officer four decades ago could result in terrorists targeting the petitioner, BIA was not compelled to make such an inference).

Moreover, the violence faced by a highly visible political leader, like a successful opposition candidate, lacks any apparent connection to the harm Petitioners themselves fear. See Makhoul, 387 F.3d at 82 (concluding that petitioner's "diminutive political profile tends to make the petitioner's asserted fear of persecution less reasonable" despite supporting documentation showing alleged persecutors "have targeted political dissidents"). At most, Mr. Rodrigues testified that he was a supporter of the opposition party, but offered no evidence of any activities he took in support of the party. In short, Petitioners have offered no evidence they have participated in activities that would put them on the Gardingos' radar. See Bunthan v. Gonzales, 239 F. App'x 615, 618 (1st Cir. 2007) (per curiam) (concluding that petitioner was "unlikely target" despite claiming to be active in political party because "she did not organize others or play a leadership role"); Morales v. INS, 208 F.3d 323, 330-31 (1st Cir. 2000) (concluding that evidence of persecution of union leaders and active members did not corroborate petitioner's assertion that

he would face persecution because he was neither a leader or active participant).

This court has considered cases supported by a more compelling record of threatened harm, but nevertheless concluded those petitioners had not demonstrated a well-founded fear of future persecution. See de Abarca v. Holder, 757 F.3d 334, 335, 337 (1st Cir. 2014) (reasoning that neither death threats directed at petitioner's children nor general conditions about violent crime were sufficient to establish a well-founded fear of future persecution). Against that backdrop, we cannot find that Petitioners have provided any reasoning to compel a different result. Their evidence and arguments simply lack the impetus to tilt the substantial evidence scale in their favor.

Because we uphold the IJ's conclusion that the Petitioners lacked an objectively reasonable, well-founded fear of persecution, we need not address Petitioners' arguments regarding the IJ's alternative bases for denying asylum, namely, the reasonableness of relocation elsewhere in Brazil and the Brazilian government's willingness and ability to confront political corruption and drug trafficking. And since Petitioners failed to carry "the devoir of persuasion" to show that they are refugees within the meaning of the statute, Petitioners' remaining claim for withholding of removal under the INA also fails. Makhoul, 387 F.3d at 82 (explaining that if a petitioner "cannot establish

asylum eligibility, his claim for withholding of [removal] fails a fortiori" because a withholding claim requires "a more stringent burden of proof than does an asylum claim").

### III. CONCLUSION

For these reasons, the petition is **denied**.