# United States Court of Appeals
## For the First Circuit

No. 25-1306

FRANKLIN MAUDIEL VASQUEZ-CHAVEZ,

Petitioner,

v.

TODD BLANCHE, Acting Attorney General,[*]

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Aframe, Lipez, and Howard, Circuit Judges.

Carlos E. Estrada and Estrada Law Office on brief for petitioner.

Anthony J. Nardi, Trial Attorney, Office of Immigration Litigation, Civil Division, United States Department of Justice, Kohsei Ugumori, Senior Litigation Counsel, and Brett A. Shumate, Assistant Attorney General, on brief for respondent.

May 22, 2026

---

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Todd Blanche is automatically substituted for former Attorney General Pamela J. Bondi as respondent.

**LIPEZ, <u>Circuit Judge</u>.** Franklin Maudiel Vasquez-Chavez ("Vasquez") left El Salvador in 2017, fleeing years of physical and verbal abuse by his father, and entered the United States without inspection in June of that year. He now petitions for review of a decision by the Board of Immigration Appeals ("BIA") dismissing his appeal of the immigration judge's ("IJ") denial of his application for asylum and withholding of removal. Vasquez argues primarily that the BIA erred in upholding the IJ's finding that his claims involved a family dispute that did not support his request for relief. We deny the petition.

## I.

### A. Factual Background

We draw the facts relevant to our disposition from the administrative record, which includes Vasquez's application for relief and the testimony from his merits hearing before the IJ.

Vasquez was born in El Salvador in 1997. In his asylum application and subsequent testimony before the IJ, Vasquez described years of physical and verbal abuse as a child at the hands of his father. When he was eight years old his father beat him with a belt; at thirteen years old, his father assaulted him again. In June 2016, Vasquez defended his mother during a physical altercation between his parents, which led to his father assaulting him. Two weeks later, Vasquez tried to reconcile with his father. When his father saw him, he tried to run Vasquez over with his

- 2 -

truck. His father then verbally and physically assaulted him, pulled out a knife, and attempted to stab him. Vasquez successfully escaped.

Although his mother filed a police report in July 2016 that described Vasquez's father's recurrent abusive behavior, the police allegedly never investigated the incident involving the truck. Indeed, Vasquez testified that nothing was ever done because his father was friendly with, and bribed, members of the police department. He also testified that before his last altercation with his father, police officers stopped him and beat him with batons. He believed they were acting on behalf of his father. He further alleged that there is "currently an order out to kill [him] in El Salvador."

Vasquez fled to the United States after his father tried to kill him and crossed the U.S. border for the first time in September 2016 near Laredo, Texas, without inspection. He was later granted voluntary departure and returned to El Salvador in May 2017. He remained there for only one week before re-entering the United States near Hidalgo, Texas, again without inspection. On this occasion, he encountered U.S. Customs and Border Patrol officers who served him with a Notice to Appear ("NTA"), charging him with removability pursuant to § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA") and 8 U.S.C.

1182(a)(6)(A)(i).[1]  He filed an application for asylum and withholding of removal and sought protection under the Convention Against Torture ("CAT").  He appeared before the IJ for his merits hearing in February 2022.

## B. Immigration Court Decisions

Most relevant to our disposition of Vasquez's petition, the IJ determined that Vasquez's account of persecution stemmed from a family dispute and that he did not provide sufficient evidence of the government's inability or unwillingness to protect him.

In assessing the required nexus between the harm Vasquez suffered and a protected ground, see 8 U.S.C. § 1101(a)(42)(A), the IJ explained that the violent episodes Vasquez experienced "were almost entirely in response to friction generated by specific circumstances of the breakdown of his parents' marriage, his efforts to support his mother, and the influences of [his father's girlfriend]."  The IJ noted that the instances of abuse from Vasquez's father were "intermittent" and "rare."  Consequently, the IJ found that Vasquez's father's "primary motivation" in harming Vasquez was unrelated to any of the grounds required by

---

[1] These provisions establish that "[a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible."  8 U.S.C. § 1182(a)(6)(A)(i).

asylum law.  Rather, the IJ found, that motivation was Vasquez's father's "desire to avoid child support, his desire to end his relationship with [Vasquez's] mother, and his desire to be in a relationship with [his new partner]."[2]

Moreover, while the IJ found that Vasquez's asylum application was timely,[3] and that his testimony was credible, albeit with several "inconsistencies," the IJ explained that Vasquez failed to provide sufficient corroborating evidence, reasonably available to him, about the involvement of the police in the harm that he suffered.  In particular, the IJ noted that Vasquez only testified to the police attacking him in his oral testimony, omitted this information from his written asylum application, and did not provide affidavits from family members and friends who could have corroborated his claims of police brutality.[4]  Vasquez testified that he could have acquired most of

---

[2] Although the IJ found that Vasquez failed to demonstrate that he was harmed on account of a protected ground, the IJ acknowledged that the abuse Vasquez described rose "to the level of harm associated with persecution."

[3] Vasquez submitted his application slightly after the one-year filing deadline, but the IJ found that he fell within a class of asylum applicants whose deadlines were extended because they did not receive notice of the one-year limit from the Department of Homeland Security.  See, e.g., Gómez-Medina v. Barr, 975 F.3d 27, 30 (1st Cir. 2020).

[4] The IJ listed the individuals from whom Vasquez failed to procure affidavits: his mother, who filed police reports on his behalf; his adult sister, who was similarly physically assaulted by their father; his girlfriend at the time, whose home he was

these affidavits, but that he chose not to do so because he thought he had submitted enough evidence and he "did not want to involve" certain people in his application.

The IJ found these explanations insufficient, noting that after Vasquez's mother reported Vasquez's father's history of violent acts to the authorities, "the abuse against [Vasquez's] mother and sister immediately stopped for a period of almost six years and has never recommenced." The IJ therefore determined that Vasquez had not made a sufficient showing that the government of El Salvador was unable or unwilling to protect him from any harm he was experiencing. The IJ denied Vasquez's application for asylum, withholding of removal, and CAT protection.

The BIA deemed Vasquez's CAT claim waived because he did not challenge the IJ's denial of his CAT application on appeal and upheld the denial of Vasquez's application for asylum and withholding of removal.[5] Citing the sequence of events that preceded the attempted murder of Vasquez, the BIA emphasized that "[e]vents that stem from personal disputes are generally not enough to show the required nexus to a protected ground." The BIA also stated that "[o]n appeal, the respondent has not challenged the

_____

leaving on the occasions when police officers allegedly attacked him; his uncle, who witnessed Vasquez's father talking with police officers; and friends who harbored Vasquez when he hid from his father prior to leaving El Salvador.

[5] Vasquez does not raise his CAT claim before us.

[IJ's] determination that he did not establish the government of El Salvador would be unable or unwilling to protect him from his father.  Thus, he has waived this issue."

Vasquez then filed this timely petition for review.

## II.

### A. Legal Standards

Where the BIA, rather than expressly adopting an IJ's findings, states that an IJ's findings were not erroneous and accepts them, "we focus our review on the BIA's decision." Contreras v. Bondi, 134 F.4th 12, 18 (1st Cir. 2025).  We review the BIA's legal conclusions de novo, and we apply the substantial evidence standard to factual findings.  Aguilar-Escoto v. Garland, 59 F.4th 510, 515 (1st Cir. 2023).  The substantial evidence standard is deferential: we must affirm the BIA's determination unless "any reasonable adjudicator would be compelled to conclude to the contrary."  Urias-Orellana v. Bondi, 146 S. Ct. 845, 850 (2026) (quoting 8 U.S.C. § 1252(b)(4)(B)).

Applications for asylum involve a multi-faceted inquiry. To qualify for relief, applicants must first prove that they meet the definition of a refugee under the INA.  8 U.S.C. § 1158(b)(1); see Barnica-Lopez v. Garland, 59 F.4th 520, 527 (1st Cir. 2023). A refugee is someone who "is unable or unwilling to return to . . . [their] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality,

- 7 -

membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A).

The "persecution" element requires, inter alia, proof of "a certain level of serious harm (whether past or anticipated)" and "a causal connection to one of the statutorily protected grounds." Barnica-Lopez, 59 F.4th at 527. A causal connection or nexus between the harm and a protected ground exists "only if the statutorily protected ground . . . was 'one central reason' for the harm alleged." Id. at 528. "Personal disputes are generally not enough to show the required nexus between past harm and a protected ground." Id. at 531 (quotation modified). In addition, where a private person is alleged to be the persecutor, an applicant must show that the government was unable or unwilling to protect him from that person. Castano v. Bondi, 160 F.4th 226, 232 (1st Cir. 2025).

To prove persecution, applicants can either (1) prove they suffered past persecution based on one or more of the five protected grounds, which would entitle them to a rebuttable presumption that their fear of future persecution is well-founded, or (2) prove they have a well-founded fear of future persecution that is "both subjectively genuine and objectively reasonable." Esteban-Garcia v. Garland, 94 F.4th 186, 191 (1st Cir. 2024) (quoting Sunarto Ang v. Holder, 723 F.3d 6, 10-11 (1st Cir. 2013)). If there is no finding of persecution, the asylum claim fails.

Accordingly, any claim under the more stringent test for withholding of removal "necessarily fail[s]" as well. Ramos-Hernandez v. Bondi, 163 F.4th 44, 54 (1st Cir. 2025).

The burden of proof is on the applicant to corroborate material elements of his or her claim where evidence is easily obtainable. Matter of L-A-C-, 26 I. & N. Dec. 516, 518-19 (BIA 2015). True, "[t]he testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. § 208.13(a). However, even if the agency finds an applicant credible, it "need not find his evidence persuasive or sufficient to meet the burden of proof." Rodrigues v. Garland, 124 F.4th 58, 68 (1st Cir. 2024) (quoting Garland v. Ming Dai, 593 U.S. 357, 371 (2021)). In such cases, an IJ can require corroborating evidence. See Soeung v. Holder, 677 F.3d 484, 488 (1st Cir. 2012).

## B. Vasquez's Petition for Review

We focus on the critical aspects of Vasquez's asylum application that undermine his appeal.

Vasquez argues that the BIA erred by upholding the IJ's finding that he failed to demonstrate persecution despite the severity of the harm he experienced. The IJ did indeed find that the harm Vasquez described in his application and testimony rose "to the level of harm associated with persecution." However, Vasquez incorrectly equates this finding with a legal finding of

persecution.  A showing of persecution requires, inter alia, a certain level of serious harm (which Vasquez showed), and a "causal connection," also referred to as a nexus, between the harm and a protected ground (which he did not show).  Barnica-Lopez, 59 F.4th at 527 (quoting Martínez-Pérez v. Sessions, 897 F.3d 33, 39 (1st Cir. 2018)).  Showing only that the harm rises to the requisite level of severity is not enough to prove persecution.

Vasquez did not show that the record compels a finding that the harm he suffered resulted from anything more than a personal dispute, much less that the harm had a causal connection to his alleged membership in any particular social groups -- in this case, a "Salvadoran man unable to leave a domestic relationship" or as a "member of the Vasquez family."  Rather, substantial evidence supports the BIA's determination that the IJ did not err in finding that there was no nexus to a protected ground.  Vasquez is therefore not entitled to asylum or withholding of removal.

We add that Vasquez's petition would fail on other grounds as well.  The IJ cited the lack of corroborating evidence on whether the government was unwilling or unable to protect him from his father.  Vasquez challenges the demand for more corroborating evidence, noting that the IJ deemed his testimony credible.  Although it is true that credible testimony may be enough to establish persecution, as we have noted, an IJ may

require reasonably available corroboration and may deny an application if the petitioner fails to provide it. See Soeung, 677 F.3d at 488; Avelar Gonzalez v. Whitaker, 908 F.3d 820, 827 (1st Cir. 2018).

Here, the IJ asked for more evidence to corroborate Vasquez's persecution claims in light of certain inconsistencies in his testimony. Vasquez's explanations for the failure to provide corroboration were unpersuasive to the IJ. The BIA concluded that the IJ properly sought corroboration and appropriately denied Vasquez's application for failing to present the additional support. Nothing in the record undermines those conclusions.

Moreover, as the BIA noted, Vasquez failed to challenge the IJ's ruling that he did not establish that the local police would be unable or unwilling to protect him from his father. His waiver before the BIA on that necessary component of his asylum claim suffices on its own to support the BIA's, and our,[6] rejection of Vasquez's claims for asylum and withholding of removal.[7]

---

[6] "[T]heories not advanced before the BIA may not be surfaced for the first time in a petition for judicial review of the BIA's final order." Morgan v. Garland, 120 F.4th 913, 927 (1st Cir. 2024) (quoting Makhoul v. Ashcroft, 387 F.3d 75, 80 (1st Cir. 2004)).

[7] Vasquez puts forth two additional arguments that are unavailing. First, he asserts that his due process rights were violated when his case was heard via tele-link by an IJ sitting at an "adjudication center" in Richmond, Virginia, instead of at the

- 11 -

The petition for review is therefore <u>denied</u>.

Boston Immigration Court, resulting in technological glitches in the proceeding. For example, he says that the government attorney lost internet connectivity multiple times during the hearing, which interrupted cross-examination and compelled the IJ to perform the "prosecutorial role" by questioning Vasquez. Vasquez failed to seek review on this basis before the BIA and, again, cannot raise that issue for the first time here. <u>See</u> <u>Morgan</u>, 120 F.4th at 927.

Second, he argues that the IJ and BIA erred in denying him humanitarian asylum relief. If an asylum seeker has established past persecution and the government has rebutted his or her fear of future persecution, he or she may still be able to obtain discretionary asylum relief based on past persecution alone under the "humanitarian exception." <u>Ordonez-Quino</u> v. <u>Holder</u>, 760 F.3d 80, 93 (1st Cir. 2014); <u>see</u> 8 C.F.R. § 1208.13(b)(1)(iii). This rarely-applied exception allows for a discretionary grant of asylum in cases where "past persecution is so severe that repatriation would be inhumane." <u>Id.</u> at 94 (quoting <u>Tokarska</u> v. <u>I.N.S.</u>, 978 F.2d 1, 2 (1st Cir.1992)); <u>see</u> <u>Miranda-Bojorquez</u> v. <u>Barr</u>, 937 F.3d 1, 7 (1st Cir. 2019). Vasquez's humanitarian asylum argument fails, however, because a finding of past persecution is a necessary precondition. As we have explained, substantial evidence supports the BIA's upholding of the IJ's finding of no persecution, whether in the past or in the future.

- 12 -